1

2  RAFEY S. BALABANIAN (SBN – 315962)
   rbalabanian@edelson.com
3  J. AARON LAWSON (SBN – 319306)
   alawson@edelson.com
4  EDELSON PC
   123 Townsend Street, Suite 100
5  San Francisco, California 94107
   Tel: (415) 212-9300
6  Fax: (415) 373-9435

7  *Counsel for Plaintiff and the Putative Classes*

8
                **UNITED STATES DISTRICT COURT**
9
                **CENTRAL DISTRICT OF CALIFORNIA**
10
                       **WESTERN DIVISION**
11

12  JOSEPH LACK, individually and on      Case No. 2:18-cv-00617-RGK
    behalf of all others similarly situated,
13                                         **PLAINTIFF'S MOTION FOR AND**
                                           **MEMORANDUM IN SUPPORT OF**
14              *Plaintiff,*               **CLASS CERTIFICATION**

15        *v.*                             Judge:   Hon. R. Gary Klausner
                                           Date:    April 29, 2019
16  MIZUHO BANK, LTD., a Japanese          Time:    9:00 a.m.
    financial institution, and MARK        Place:   Courtroom 850
17  KARPELES, an individual,

18              *Defendants.*

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ................................................................ **1**

**FACTUAL BACKGROUND** ........................................... **2**

**ANALYSIS** ....................................................................... **8**

**I.**   **The proposed class meets the requirements of Rule 23(a)** ................. **9**

    **A.**   **The proposed class is sufficiently numerous** ............................. **9**

    **B.**   **Resolution of the class's claim turns on several common questions** ........................................................ **9**

    **C.**   **Lack is typical of the proposed class** ........................................ **12**

    **D.**   **Lack and his counsel are adequate to represent the proposed class** ........................................................ **13**

**II.**   **The Proposed Class Satisfies Fed. R. Civ. P. 23(b)(3)** ...................... **14**

    **A.**   **Common questions predominate over any individual issues** ........................................................ **14**

    **B.**   **A class action is a superior means of resolving this dispute** ........................................................ **19**

**CONCLUSION** ........................................................ **19**

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases**

*Bristol-Myers Squibb Co. v. Superior Court of California*,
    137 S. Ct. 1773 (2017) ............................................................... 8

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978) ................................................................. 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................... 8

**United States Appellate Court Cases**

*ABS Entm't, Inc. v. CBS Corp.*,
    908 F.3d 405 (9th Cir. 2018) ................................................... 8

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ................................................. 12

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .................................... 12, 13, 19

*In re First Alliance Mortg. Co.*,
    471 F.3d 977 (9th Cir. 2006) ............................................. 2, 10

*Jenson v. Fiserv Trust Co.*,
    256 F. App'x 924 (9th Cir. 2007) ...................................... 12, 15

*Leyva v. Medline Indus., Inc.*,
    716 F.3d 508 (9th Cir. 2013) ................................................. 14

*Pulaski & Middleman LLC v. Google Inc.*,
    802 F.3d 979 (9th Cir. 2015) ................................................. 14

*Torres v. Mercer Canyons, Inc.*,
    835 F.3d 1125 (9th Cir. 2016) ................................................. 9

*Vaquero v. Ashley Furniture Indus. Inc.*,
    824 F.3d 1150 (9th Cir. 2016) ............................................... 15

**United States District Court Cases**

*Broomfield v. Craft Brew All., Inc.,*
No. 17-cv-01027, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ......... 11, 17

*Bruno v. Quten Research Institute, LLC,*
280 F.R.D. 524 (C.D. Cal. 2011)................................................................... 9

*Delarosa v. Boiron, Inc.,*
275 F.R.D. 582 (C.D. Cal. 2011)................................................... 12, 13, 19

*Falco v. Nissan N. Am. Inc.,*
No. CV 13-00686 DDP, 2016 WL 1327474
(C.D. Cal. Apr. 5, 2016) .............................................................. 2, 11, 15

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.,*
326 F.R.D. 592 (N.D. Cal. 2018) ................................................................ 11

*Greene v. Mizuho Bank, Ltd.,*
206 F. Supp. 3d 1362 (N.D. Ill. 2016).......................................................... 7

*Greene v. Mizuho Bank, Ltd.,*
327 F.R.D. 190 (N.D. Ill. 2017) .................................................................... 8

*In re: MtGox Co., Ltd.,*
No. 14-31229-sgj-15 (Bankr. N.D. Tex.) ...................................................... 7

*Joint Equity Comm. of Inv. of Real Estate Partners, Inc. v. Coldwell Banker Real*
*Estate Corp.,*
281 F.R.D. 422 (C.D. Cal. 2012).................................................... 14, 15, 17

*Jordan v. Paul Financial, LLC,*
285 F.R.D. 435 (N.D. Cal. 2012) ......................................................... 16, 17

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
238 F.R.D. 482 (C.D. Cal. 2006).................................................................. 12

*Ngheim v. Dick's Sporting Goods, Inc.,*
318 F.R.D. 375 (C.D. Cal. 2016).................................................................... 9

*Phelps v. 3PD, Inc.,*
261 F.R.D. 548 (D. Or. 2009)...................................................................... 10

*Schulein v. Petroleum Dev. Corp.*,
    No. SACV 11-1891 AG, 2014 WL 114520 (C.D. Cal. Jan. 6, 2014) .......... 10

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
    2013 WL 3200500, No. CV 11-5858 CAS (C.D. Cal. June 17, 2013) . *passim*

*Wiener v. Dannon Co., Inc.*,
    255 F.R.D. 658 (C.D. Cal. 2009)................................................................... 13

**State Cases**

*Engalla v. Permanente Med. Grp., Inc.*,
    15 Cal. 4th 951 (1997)....................................................................... 2, 11, 14

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
    97 Cal. App. 4th 1282 (4th Dist. 2002) .................................................. 16, 17

*Mirkin v. Wasserman*,
    5 Cal. 4th 1082 (1993)............................................................................... 12

*Occidental Land, Inc. v. Superior Court*,
    18 Cal. 3d 355 (1976)........................................................................... 16, 17

*The MEGA Life & Health Ins. Co. v. Superior Court*,
    172 Cal. App. 4th 1522 (4th Dist. 2009) ...................................................... 14

*Vazquez v. Superior Court*,
    4 Cal. 3d 800 (1971)....................................................................... 11, 15, 17

**Rules and Statutory Provisions**

Fed. R. Civ. P. 23 ...............................................................................*passim*

**Other Authorities**

Daniel Cawrey, CoinDesk,
    "Withdrawals from Mt. Gox: growing pains or banking bottleneck?",
    https://bit.ly/2Sw7v1O (Aug. 12, 2013, 12:43 UTC).................................... 7

Plaintiff Joseph Lack hereby moves to certify the following class: All California residents who wired money to Mt. Gox KK's bank account at Mizuho Bank, Ltd., between June 20, 2013 and February 24, 2014. Plaintiff further moves to be appointed class representative, and to have his counsel appointed class counsel under Fed. R. Civ. P. 23(g). In support, Plaintiff states as follows:

## INTRODUCTION

This case involves the concealment of information critical to the decision to invest in cryptocurrency. Defendant Mizuho Bank, Ltd. provided banking services for Mt. Gox, a bitcoin exchange based in Tokyo. That partnership proceeded with little conflict until Mizuho decided that it no longer wanted to do business with Mt. Gox, and embarked on a months-long quest designed to either force Mt. Gox to sever the relationship or create a pretext for Mizuho to do so without getting blood on its hands. The centerpiece of this campaign was Mizuho's decision, unilaterally implemented on June 21, 2013, to no longer process outbound wire withdrawals from Mt. Gox's account. That information was not shared with the world either by Mt. Gox's owner—Defendant Mark Karpeles—or by Defendant Mizuho. Plaintiff Joseph Lack contends that this information was material to the decision to invest in bitcoin on the Mt. Gox exchange, and that Mizuho intentionally did not disclose this information because it wanted to avoid appearing culpable for difficulties Mt. Gox users encountered. Even though there was little to no hope of retrieving money deposited on the exchange after June 2013, thousands of individuals nevertheless wired money to Mt. Gox's account at Mizuho—money that was lost once the exchange went dark in early 2014.

Because Mizuho intentionally withheld this same information from everyone, Lack now moves to certify a class of Californians who deposited money in Mt. Gox after Mizuho made its fateful decision and thus were defrauded by Mizuho's actions. Lack alleges that the fact that Mizuho was not processing wire withdrawals was material to his and others' decisions to invest on Mt. Gox. But

because no one knew of Mizuho's decision, thousands of investors deposited currency on the exchange after June 21, 2013 (even though none would have done so had they known the truth)—deposits that were lost when Mt. Gox declared bankruptcy in February 2014. Lack now moves to certify a class of Californian depositors who wired money to Mt. Gox's account at Mizuho between June 21, 2013 (when Mizuho implemented its new policy), and February 24, 2014 (when trading was suspended on Mt. Gox in advance of bankruptcy).

As the Ninth Circuit has recognized, fraud claims involving similar misrepresentations are typically litigable on a classwide basis, and "has followed an approach that favors class treatment of fraud claims stemming from a common course of conduct." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990 (9th Cir. 2006). California law makes this rule especially applicable here: "A presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material." *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 977 (1997). Thus, when the same information is misrepresented to (or withheld from) a class, reliance can be inferred classwide. Class treatment is therefore appropriate where common questions about falsity, materiality, and intent drive the litigation. *See, e.g.*, *Falco v. Nissan N. Am. Inc.*, No. CV 13-00686 DDP, 2016 WL 1327474, at *11 (C.D. Cal. Apr. 5, 2016); *Vaccarino v. Midland Nat'l Life Ins. Co.*, No. CV 11-5858 CAS, 2013 WL 3200500, at *12 (C.D. Cal. June 17, 2013). As explained below, common proof will establish whether Mizuho acted with the requisite intent and whether the information withheld from class members was material. And answering those two questions will ease resolution of any reliance issues. Because common proof will drive the resolution of central issues in this action, and all other requirements under Fed. R. Civ. P. 23(a) and (b)(3) are satisfied, certification is warranted.

## FACTUAL BACKGROUND

Bitcoin is an electronic currency that allows for verifiable peer-to-peer

transactions. It is intended to eliminate certain transaction costs and opportunities for rent-seeking, reduce the potential sources for counterparty risk, and increase transparency in financial transactions. To acquire bitcoin one must either "mine" it by solving complicated math problems, or purchase it with government-backed currency (known in the bitcoin world as "fiat currency"). Platforms for buying and selling bitcoin therefore require a bank account to facilitate and process fiat-currency transactions.

These platforms are known as "bitcoin exchanges." The Mt. Gox bitcoin exchange, owned and operated by Mt. Gox KK, a Japanese company, was one such exchange. Potential investors could register for an account on Mt. Gox. After registration, investors had the option of wiring money to Mt. Gox's bank accounts, where Mt. Gox would hold the money on the investor's behalf. That money could be used to purchase bitcoin from other sellers on the exchange. Investors could also sell bitcoin for currency, which would then be held by Mt. Gox on the seller's behalf.



In response, Mt. Gox established an account at Japan Post Bank. But wire withdrawals at Japan Post

---

[1]    All exhibits referenced are exhibits to the Declaration of J. Aaron Lawson in Support of Class Certification ("Lawson Decl.").

1    were highly limited in two critical ways: (a) they could only be done on paper,

2    materially reducing the speed and volume at which they could be processed, and

3    (b) international withdrawals *had* to be routed through Deutsche Bank, requiring

4    two separate currency exchanges, and adding time and expense to all wire

5    withdrawals. (Exh. 2, at Edelson007121-22.) For a time Mt. Gox users also had the

6    option of using two other payment processors, but those options became

7    unavailable to American users beginning in May 2013.

8           Thus, as of June 2013, Mizuho was the only route for currencies into and out

9    of Mt. Gox for Mt. Gox's American customers. ███████████████████

10   ███████████████████████████████████████████████

11   ███████████████████████████████████████████████

12   █████████████████████████████████████████████

13   ████████████████████████████████████████████

14   ███████████████████████████████████████████████

15   █████████████████████████████████████████████

16   ███████████████████████████████████████████████

17   ██████████████████████████████████████████

18   ██████████████████████████████████████████████

19   ████████████████████████████████████████████

20   ██████████████████████████████████████████████

21   █████████████████████████████████████████████

22   ████████████████████████████████████████████████

23   ████████████████████████████████████████████████

24   ███████████████████████████████████████████████

25   ████████████████████████████████████████████

26    ███████████████████████████████████████████████

27   █████████████████████████████████████████████████

28   ██████████████████████████████████████████████

Contemporaneous emails also show that high-level Mt. Gox employees understood things differently; by their lights Mizuho was no longer letting any currency out of the country. (Exh. 9, Edelson007136.)



4    All of this was notably absent from the public-facing picture shared with Mt.

5  Gox's customers. Bitcoin investors were informed on June 20 of a "temporary

6  hiatus" in United States dollar withdrawals from Mt. Gox (Exh. 15), and then told

7  on July 4 that withdrawals had resumed (Exh. 16).

27    But Mt. Gox users noticed things were amiss well before this point. And

28  they certainly were: The evidence shows that between June 26, 2013, and February

26, 2014, ██████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████ (Exh. 1, at 38:17-24, 40:5-6.)

*See also In re: MtGox Co., Ltd.*, No. 14-31229-sgj-15 (Bankr. N.D. Tex.),

Declaration of Kobayashi in Support of Petition for Recognition, ECF 127 at ¶ 24

("I currently have information on the location of approximately 80,000 customers

… approximately 30,701 customers are located in the United States".) That would

mean Mt. Gox likely received between 6000 and 8000 withdrawal requests from its

American investors during the same period. ████████████████████████
██████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████████████████
████████████████████

Mt. Gox's difficulties were heavily covered in the bitcoin related press. But

as Judge Feinerman has noted, these articles are "more accurately characterized as

misinformation." *Greene v. Mizuho Bank Ltd.*, 206 F. Supp. 3d 1362, 1375 (N.D.

Ill. 2016). An August 2013 article on the website CoinDesk, a popular source for

bitcoin-related news, neatly encapsulated the dilemma facing bitcoin investors:

"Withdrawals from Mt. Gox," the headline read, "growing pains or banking

bottleneck?" *See* Daniel Cawrey, CoinDesk, "Withdrawals from Mt. Gox: growing

pains or banking bottleneck?", https://bit.ly/2Sw7v1O (Aug. 12, 2013, 12:43

UTC). ██████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████

Joseph Lack contends that information about Mizuho's decision to stop processing withdrawals from Mt. Gox's account was material to the decision to invest in bitcoin on Mt. Gox. (Exh. 20, Deposition of Joseph Lack, at 146:7-24.) As Lack has noted, given the spike in the number of bitcoin-denominated transactions in late 2013, some banking backlog would even be expected. (*Id.* at 53:13-54:2.) But a backlog caused by a bank's outright refusal to process transactions is different in kind from a typical logjam. (*Id*. at 54:3–24, 144:4–145:25, 163:2–11, 164:20–165:2.) By withholding this information from the public, Mt. Gox and Mizuho deprived thousands of investors, including more than 100 in California, of critical information material to the investing calculus. Had Lack known the true state of affairs, he would not have wired $40,000 to Mt. Gox's account at Mizuho. (*Id*. at 19:22–25, 146:17–24.)

## ANALYSIS

Lack moves to litigate his fraud claim on behalf of a class of California residents who deposited money on Mt. Gox between June 21, 2013, and February 24, 2014.[2] To obtain class certification, Lack must demonstrate compliance with the requirements of Fed. R. Civ. P. 23(a), and, because he seeks money damages, with the requirements of Fed. R. Civ. P. 23(b)(3). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).[3]

---

[2]     Lack, along with another plaintiff, filed a similar motion in the *Greene* litigation, but the motion was never adjudicated as to him because the court determined that Illinois courts lacked personal jurisdiction over Mizuho with respect to Lack's claims following *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 773 (2017). Lack's dismissal from that action precipitated the instant litigation. *See Greene v. Mizuho Bank Ltd.*, 327 F.R.D. 190, 199 (N.D. Ill. 2017) (noting that the Illinois plaintiff was an inadequate class representative, but that questions regarding compliance with class-certification prerequisites likely would need to be answered in this case).

[3]     Although L.R. 23-3 requires class-certification motions to be filed within 90 days of service of the complaint, the Ninth Circuit recently declared this rule to be "obsolete" and "incompatible with" the Federal Rules. *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405, 427 (9th Cir. 2018). Moreover, there exists good cause to excuse noncompliance with the Local Rule: At the 90-day mark, this action was subject to a pending motion to centralize

## I.   The proposed class meets the requirements of Rule 23(a).

### A.   The proposed class is sufficiently numerous.

Fed. R. Civ. P. 23(a)(1) requires a proposed class to be so numerous that individual joinder is impractical. Courts have generally concluded that a class of 40 or more members meets this low threshold, *Bruno v. Quten Research Institute, LLC*, 280 F.R.D. 524, 533 (C.D. Cal. 2011), and a court can rely on "common sense and reasonable inferences" to determine that numerosity is satisfied, *Ngheim v. Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 380 (C.D. Cal. 2016).

████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████ Thus, it is likely that many more deposits originated from California. And while some class members may have deposited money on more than one occasion, common sense suggests that there are at least 40 class members, and numerosity is therefore satisfied.

### B.   Resolution of the class's claim turns on several common questions.

Fed. R. Civ. P. 23(a)(2) requires that a class action contain "questions of law or fact common to the class." This requirement tests "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350. "To satisfy [the commonality prerequisite for class certification], even a single common question will do." *Torres v. Mercer Canyons, Inc.*, 835 F.3d 1125, 1133 (9th Cir. 2016) (quotations omitted).

---

in the JPML, and shortly thereafter was subject to both a motion to dismiss and a motion to stay. (Dkts. 37, 66.)

1    As the Ninth Circuit explained in *In re First Alliance Mortgage*, fraud

2  claims "stemming from a common course of conduct" will typically present

3  common questions. 471 F.3d at 990 (quotation omitted). Here, Mizuho withheld

4  the same information about its decision to no longer process outbound wire

5  withdrawals from Mt. Gox's account from all class members, remaining mute as

6  Mt. Gox's customers demanded answers about the chaos Mizuho's decision had

7  caused. Courts in this circuit have recognized this kind of behavior as the sort of

8  common course of conduct supporting certification. *See, e.g.*, *Schulein v.*

9  *Petroleum Dev. Corp.*, No. SACV 11-1891 AG, 2014 WL 114520, at *3 (C.D. Cal.

10  Jan. 6, 2014) (consistent omission of statements when duty to disclose exists

11  represents common factual question in securities case); *Phelps v. 3PD, Inc.*, 261

12  F.R.D. 548, 560-61 (D. Or. 2009) (characterizing class fraud claim premised on the

13  theory that the same information was withheld from every class member as a claim

14  based on a common course of conduct); *Chastain v. Union Sec. Life Ins. Co.*, No.

15  CV 06-5885 ABC, 2008 WL 11333691, at *5 (C.D. Cal. May 6, 2008) (uniform

16  omission of material facts about being charged premiums under a life insurance

17  policy a common question of fact).

18    And it is clear that Mizuho's actions support a finding of commonality here.

19  Under California law, a claim for fraud requires proof of the following elements:

20  (a) misrepresentation (including by nondisclosure); (b) knowledge of falsity (or

21  "scienter"); (c) intent to induce reliance; (d) justifiable reliance; and (e) resulting

22  damage. *Engalla*, 15 Cal. 4th at 974. Lack's claims are premised on a

23  nondisclosure of Mizuho's decision to cease processing outbound wire

24  withdrawals from Mt. Gox's account in the face of a duty to disclose. (Dkt. 51, at

25  6.) And because the record is devoid of evidence that any class member was fully

26  or accurately apprised of the facts concerning Mt. Gox's bank accounts at Mizuho,

27  many of these elements are susceptible to common proof.

28

1    For instance, in California materiality is measured against an objective

2    standard. *Vazquez v. Superior Court*, 4 Cal. 3d 800, 814 n.9 (1971); *see Fitzhenry-*

3    *Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 613 (N.D. Cal. 2018)

4    (materiality generally subject to "common proof because [it] is judged according to

5    an objective standard") (internal quotations omitted). Since all class members were

6    deprived of the same information about Mizuho's decision to halt withdrawals

7    from Mt. Gox, determining whether that information is material will resolve in one

8    stroke an issue central to the claims of each class member. *See Falco*, 2016 WL

9    1327474, at *11; *Vaccarino*, 2013 WL 3200500, at *12 ("[T]he jury in this case

10   could find, on a class-wide basis, that a reasonable person would have found

11   [Defendant]'s representations to be material.").

12   Next, whether Mizuho acted with the requisite intent is an issue amenable to

13   classwide resolution given Mizuho's unitary course of conduct. *See Falco*, 2016

14   WL 1327474, at *11 (finding, for claim of fraud under California law, that

15   "common proof" would establish scienter when same information was withheld

16   from every class member); *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027,

17   2018 WL 4952519, at *13 (N.D. Cal. Sept. 25, 2018) ("the question of

18   [Defendant]'s state of mind is also common to the class"); *Vaccarino*, 2013 WL

19   3200500, at *12 (finding that scienter was a common question because

20   "[Defendant] treated the proposed class the same" with respect to the allegedly

21   fraudulent conduct). As set out above, the record shows that Mizuho took an

22   identical position on whether *anyone* should be made aware of its conduct: until

23   news reports of Mt. Gox's bankruptcy emerged around February 27, 2014, Mizuho

24   continued to process deposits into Mt. Gox's bank account without notifying any

25   putative class member that withdrawals from the exchange had been compromised.

26   Because Mizuho's silence "treated the proposed class the same," *Vaccarino*, 2013

27   WL 3200500, at *12, its intent is susceptible to common proof.

28

Further, when each class member has been exposed to the same fraudulent conduct, "an inference of reliance arises as to the entire class." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993); *see Jenson v. Fiserv Trust Co.*, 256 F. App'x 924, 926 (9th Cir. 2007) (applying classwide inference of reliance) *Vaccarino*, 2013 WL 3200500, at *13 (same). Whether such an inference is appropriate, therefore, also is a common question. (And reliance is discussed further *infra*.)

The commonality requirement is thus satisfied.

### C.    Lack is typical of the proposed class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The Ninth Circuit has explained that a named plaintiffs' claims must be "reasonably co-extensive" with those of the class, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), such as when class members "have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011). In fraud actions, typicality turns on whether the putative class representative was exposed to a substantively equivalent misrepresentation (or omission) as the class and whether he suffered the same injury. *See Vaccarino*, 2013 WL 3200500, at *7; *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589-90 (C.D. Cal. 2011); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 488 (C.D. Cal. 2006).

Lack meets both criteria. He testified that he had no idea that Mizuho had ceased processing withdrawals prior to his deposit, (Exh. 20, 101:6-8, 103:19-104:17, 145:12-25), explained why he believed this information to be material, and averred that he would not have deposited any money in Mt. Gox's bank accounts had he known about Mizuho's chicanery, (*id.* at 144:4-145:25, 146:17-24, 163:2-11, 164:20-165:2.) That theory is the theory he pursues on the class's behalf. Lack is therefore typical of the class. *Negrete*, 238 F.R.D. at 488 (plaintiff typical when her claims arose from same "single overarching fraudulent scheme[]" that was the

1  basis for the class's claims). Indeed, Mizuho has conceded as much, representing

2  to Judge Feinerman in the Northern District of Illinois that Lack was an

3  appropriate class representative for similar claims.

4      **D.    Lack and his counsel are adequate to represent the proposed**

5  **class.**

6      Rule 23(a)(4) requires that class representatives be adequate to represent the

7  class. The adequacy requirement involves a two-part inquiry: Does the named

8  plaintiff or his counsel have conflicts of interest with the class, and will the named

9  plaintiff and his lawyers vigorously prosecute the action on behalf of the class?

10  *Hanlon*, 150 F.3d at 1020.

11      First, there are no conflicts of interest between Lack or his lawyers and the

12  proposed absent class. All class members stand in the same relationship to Mizuho

13  and Mt. Gox, meaning that all class members interests are aligned. *Vaccarino*,

14  2013 WL 3200500, at *9 ("Plaintiffs seek the same relief under the same legal

15  theories as the remainder of the class, making them adequate individuals to

16  represent the interests of the class."); *Delarosa*, 275 F.R.D. at 590 (plaintiff subject

17  to "same uniform misrepresentation and standardized conduct of [the d]efendant"

18  is an adequate representative); *Wiener v. Dannon Co., Inc.*, 255 F.R.D. 658, 667

19  (C.D. Cal. 2009) (plaintiff was adequate because she possessed the same interest in

20  proving defendant's alleged fraud as every class member).

21      Second, Lack and his lawyers already have demonstrated their commitment

22  to vigorously prosecuting this action. Lack himself sat for a deposition, in which he

23  testified as to his understanding of the case and class actions generally, and has

24  produced documents relevant to the case. *See id.* at 667 (plaintiff satisfied

25  adequacy requirement by participating in discovery and demonstrating basic

26  understanding of the case). Further, Lack's counsel also has and will continue to

27  vigorously prosecute the case. Counsel filed the related *Greene* action within days

28  of Mt. Gox's decision to cease principal operations, has litigated several complex

motions related to the case in the intervening years, has conducted extensive discovery related to the case, and has developed deep knowledge of the case over the years. Counsel is plainly adequate to represent the class. *See* Fed. R. Civ. P. 23(g)(1)(A). (*See also* Exh. 22, Edelson PC Firm Resume.)

**II.     The Proposed Class Satisfies Fed. R. Civ. P. 23(b)(3).**

**A.     Common questions predominate over any individual issues.**

As explained above, this action presents several clear-cut common questions about falsity (i.e., nondisclosure of material facts), intent, and materiality. Given the elements of a claim for fraud under California law, *see Engalla*, 15 Cal. 4th at 974, only the issues of damages and reliance present any potentially individualized aspects. But neither issue precludes certification.

As to damages, all Rule 23(b)(3) requires is that the class's "damages stemmed from the defendant's actions that created the legal liability." *Pulaski & Middleman LLC v. Google Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015) (quotation omitted). "But [plaintiffs] need not show that each members' damages from that conduct are identical." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017). Indeed, "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." *Leyva v. Medline Indus., Inc.*, 716 F.3d 508, 514 (9th Cir. 2013).

Here, there is also no doubt that Lack's proposal adequately links the alleged fraud (Mizuho's failure to disclose its new policies with respect to Mt. Gox's bank accounts) to the alleged harm (deposits into that bank account that would not have otherwise been made). *See The MEGA Life & Health Ins. Co. v. Superior Court*, 172 Cal. App. 4th 1522, 1530 (4th Dist. 2009) ("The plaintiff must allege and prove … that in the absence of fraud [he] would not have entered into the contract or other transaction."). Moreover, California law requires only that the fraudulent behavior be a "substantial factor" in the plaintiff's decision making, not the sole cause, making any minor motivational deviations among class members irrelevant.

*See Joint Equity Comm. of Inv. of Real Estate Partners, Inc. v. Coldwell Banker Real Estate Corp.*, 281 F.R.D. 422, 433 (C.D. Cal. 2012). Finally, although individualized evidence of damages will be required of each plaintiff, standardized evidentiary proffers (such as bank records and affidavits) can be used, streamlining the process. And even without such standard proffers, assessing class member submissions in this case should be relatively painless given that the class numbers only in the hundreds. *See Vaquero v. Ashley Furniture Indus. Inc.*, 824 F.3d 1150, 1156 (9th Cir. 2016) (noting that the need to receive individualized damages submissions from a class of around 600 members would not destroy predominance).

As to reliance, although in an ordinary class action this issue can prove tricky, under California law a classwide inference of reliance is appropriate in circumstances like those present here, in which the same information is misrepresented to or withheld from all class members. *See Jenson*, 256 F. App'x at 926; *Joint Equity Committee*, 281 F.R.D. at 430-33; *Vaccarino*, 2013 WL 3200500, at *11 n.10. California courts recognize "the fact of reliance upon alleged false representations may be inferred from the circumstances attending the transaction which oftentimes afford much stronger and more satisfactory evidence of the inducement … than … direct testimony to the same effect." *Vazquez*, 4 Cal. 3d at 814 (quotation omitted).

In *Joint Equity Committee*, for instance, the court found that reliance could be inferred for a class of purchasers because the defendant had developed a fraudulent sales pitch that was communicated in substantially the same form to all class members. 281 F.R.D. at 430-31. While the pitch varied slightly from person to person, because the defendant engaged in a common course of conduct towards the class, a classwide inference of reliance was appropriate. *Id.* at 432-33. In *Falco v. Nissan North America*, the court applied a similar inference in light of evidence that the defendant uniformly withheld information about the possibility of engine

failure in Nissan vehicles, prompting each class member to purchase the cars based on false assurances of safety. 2016 WL 1327474, at *2, *11. And in *Jordan v. Paul Financial, LLC*, the court concluded that a jury could infer reliance on a classwide basis if it first concluded that the defendant withheld the same information from every class member, and that a reasonable person would deem that information material—so long as the named plaintiff testified to his own reliance. 285 F.R.D. 435, 465 (N.D. Cal. 2012). (As explained above, Lack has done so.)

California cases also establish that this inference is appropriate in cases involving fraudulent omissions. *See Vaccarino*, 2013 WL 3200500, at *11 n.10 (noting distinction between misrepresentation and omission is often illusory). In *Massachusetts Mutual Life Ins. Co. v. Superior Court*, for instance, the Court of Appeal upheld a trial court's finding that a classwide inference of reliance was appropriate in light of the defendant's failure to disclose concerns about certain payment plans. 97 Cal. App. 4th 1282, 1293 (4th Dist. 2002). The case concerned "vanishing premium" life insurance policies, which allow buyers to share in declared dividends supposedly covering the annual premia due on the policy. *Id.* at 1286. The plaintiffs alleged that the defendant withheld information about its plans to cut back on declared dividends out of concern about the sustainability of its operations. *Id.* The Court of Appeal noted that "the plaintiffs contend … that those concerns would have been material to any reasonable person contemplating the purchase of [a] ... plan," and so, "if plaintiffs are successful in proving these facts, the purchases common to each class member would in turn be sufficient to give rise to the inference of common reliance on representations which were materially deficient." *Id.* at 1293. Similarly, in *Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355 (1976), the California Supreme Court concluded that a class of home purchasers was properly certified to litigate a fraud claim against a developer. The developer had told purchasers that a community association formed for a new development would maintain common areas, requiring assessment of a $12.99 fee

per lot. *Id.* at 358. But the developer omitted that it was heavily subsidizing the association when the fee was calculated yet had no intent to do so in perpetuity, causing the assessed fees to increase substantially. *Id.* at 359. Because this information was shown to be material, the Supreme Court concluded that "the trial court did not err in inferring the justifiable reliance may be established on a common basis." *Id.* at 363.

This case is controlled by the principles articulated in *Massachusetts Mutual*, *Occidental Land*, *Jordan*, and *Joint Equity Committee*. Here, the same information about Mizuho's ceasing to allow withdraws from Mt. Gox was uniformly withheld from class members as part of Mizuho's common course of conduct, aimed at deflecting attention from its role in the chaos engulfing Mt. Gox. As in *Joint Equity Committee* and *Jordan*, that common course of conduct gives rise to common questions and permits a classwide inference of reliance. And as in *Massachusetts Mutual* and *Occidental Land*, Mizuho had knowledge that it was no longer processing withdrawals for Mt. Gox, which significantly upended Mt. Gox's business. Lack contends that this knowledge "would have been material to any reasonable person" contemplating whether to buy bitcoin on Mt. Gox. *Mass. Mutual*, 97 Cal. App. 4th at 1293; *see Vazquez*, 4 Cal. 3d at 814. If he successfully proves that Mizuho's decision to not process withdrawals was material to the initial decision to invest, the deposits made by class members "would in turn be sufficient to give rise to the inference of common reliance." *Mass. Mutual*, 97 Cal. App. 4th at 1293. Thus, "[t]hough proof of actual reliance is required as to each class member, the issue of materiality will have a direct impact on that analysis, and thus … this issue alone is not enough to defeat predominance." *Broomfield*, 2018 WL 4952519, at *13.

For all these reasons, common questions predominate.

**B.   A class action is a superior means of resolving this dispute.**

Finally, a class action is a superior means of resolving this dispute. *See* Fed. R. Civ. P. 23(b)(3). Only by aggregating claims can class members recover anything against an aggressive and well-heeled defendant like Mizuho Bank. The evidence shows that the average class member deposited (and thus can recover) about $12,000. While this amount is larger than many small-claim consumer class actions, it is still too small an amount to incentivize a lawyer to take this case on an individual basis. Discovery in this case was expensive, involving significant document production and review, several depositions, and expensive expert discovery on complex topics. Thus, "litigation costs would likely 'dwarf potential recovery' if each class member litigated individually." *Delarosa*, 275 F.R.D. at 594-95 (quoting *Hanlon*, 150 F.3d at 1023). Further, a proliferation of individual actions would "burden the judiciary and run afoul of Rule 23's focus on efficiency and judicial economy." *Id.* at 594.

While the parties previously have flagged the Japanese rehabilitation proceeding, the Court also has expressed a preference for proceeding with the litigation. The pending Japanese proceeding provides no reason not to certify a class because an order certifying a class is "inherently tentative," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978), meaning it can be modified to account for any recovery in the rehabilitation proceeding. Thus, the presence of the rehabilitation proceeding does not preclude certification.

## CONCLUSION

The Court should certify the proposed class, appoint Lack to serve as its representative plaintiff, and Edelson PC to serve as class counsel.

Respectfully submitted,
**JOSEPH LACK**, individually and on behalf of all others similarly situated,

Dated: March 8, 2019

By: /s/ J. Aaron Lawson
One of Plaintiff's Attorneys

RAFEY BALABANIAN (SBN – 315962)
rbalabanian@edelson.com
J. AARON LAWSON (SBN – 319306)
alawson@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: (415) 212-9300
Fax: (415) 373-9435

*Counsel for Plaintiff and the Putative Classes*