John F. Cove, Jr. (SBN 212213)
Emily V. Griffen (SBN 209162)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: +1.415.616.1100
Facsimile: +1.415.616.1199
Email: john.cove@shearman.com
Email: emily.griffen@shearman.com

Jerome S. Fortinsky (*admitted pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: +1.212.848.4000
Facsimile: +1.212.848.7179
Email: jfortinsky@shearman.com

*Counsel for Defendant Mizuho Bank, Ltd.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| JOSEPH LACK,<br><br>             Plaintiff,<br><br>     v.<br><br>MIZUHO BANK, LTD. and MARK KARPELES,<br><br>             Defendants. | Case No. 2:18-CV-00617-RGK-GJS<br><br>DEFENDANT MIZUHO BANK LTD.'S OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION<br><br>Date:           April 15, 2019<br>Time:           9:00 a.m.<br>Courtroom:   Courtroom 850<br>Judge:          Hon. R. Gary Klausner |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ii

PRELIMINARY STATEMENT ................................................................................1

FACTS .......................................................................................................................2

      A.    Mt. Gox and Mizuho................................................................2

      B.    Plaintiff Joseph Lack ..............................................................7

      C.    Procedural Background ...........................................................9

      D.    The Japanese Rehabilitation Proceeding ...................................9

ARGUMENT ...........................................................................................................10

  I.    Lack Is Subject To Unique Defenses And Therefore Does Not
      Meet The Typicality Or Adequacy Requirements Of Rule 23(a).......10

  II.   Certification Is Inappropriate Because Individual Issues Will
      Predominate.........................................................................................12

      A.    Individual Questions Relating To Materiality, Knowledge,
           Reliance, Misstatement, Reliance and Causation
           Predominate ......................................................................12

      B.    Individual Questions About Damages Will Predominate ........18

  III.  Class Treatment Is Not A Superior Means Of Adjudication..............19

CONCLUSION.........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthur v. United Indus. Corp.*,
   2018 WL 2276636 (C.D. Cal. May 17, 2018) ................................................ 12, 14

*Backus v. ConAgra Foods, Inc.*,
   2016 WL 7406505 (N.D. Cal. Dec. 22, 2016) ............................................... 11, 12

*Bruton v. Gerber Prods. Co.*,
   2018 WL 1009257 (C.D. Cal. Feb. 13, 2018) ..................................................... 18

*Charlebois v. Angels Baseball, LP*,
   2011 WL 2610122 (C.D. Cal. June 30 2011) ....................................................... 2

*Cole v. Gene by Gene, Ltd.*,
   735 F. App'x 368 (9th Cir. 2018) ...................................................................... 13

*Comcast Corp. v. Behrend*,
   569 U.S. 27 (2013) ....................................................................................... *passim*

*Davidson v. O'Reilly Auto Enters., LLC*,
   2017 WL 8292782 (C.D. Cal. Dec. 15, 2017) .................................................... 13

*Doyle v. Chrysler Grp., LLC*,
   663 F. App'x 576 (9th Cir. 2016) ...................................................................... 18

*In re: First Am. Home Buyers Prot. Corp.*,
   313 F.R.D. 578 (S.D. Cal. 2016), *aff'd sub nom. Carrera v. First
   Am. Home Buyers Prot. Co.*, 702 F. App'x 614 (9th Cir. 2017) ......................... 16

*Greene v. Mizuho Bank, Ltd.*,
   327 F.R.D. 190 (N.D. Ill. 2018) .................................................................... 9, 11

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ........................................................................... 10

*Jordan v. Paul Fin., LLC*,
   285 F.R.D. 435 (N.D. Cal. 2012) ................................................................. 16, 17

*Junod v. NWP Servs. Co.*,
   2016 WL 6306030 (C.D. Cal. July 18, 2016) ...................................................... 2

*Mass. Mut. Life Ins. Co. v. Super. Ct.*,
   97 Cal. App. 4th 1282 (4th Dist. 2002) ................................................................ 17

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................................ 17

*Mezzadri v. Med. Depot, Inc.*,
   2016 WL 5107163 (S.D. Cal. May 12, 2016) .............................................. 14, 17

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993) ......................................................................................... 16

*Occidental Land, Inc. v. Super. Ct.*,
   18 Cal. 3d 355 (1976) .......................................................................................... 16

*Otto v. Abbot Labs., Inc.*,
   2015 WL 12776591 (C.D. Cal. Jan. 28, 2015)..................................................... 19

*Runyon v. Bostick Inc.*,
   2017 WL 5988019 (C.D. Cal. Mar. 28, 2017) ..................................................... 20

*Vasquez v. Superior Court*,
   4 Cal. 3d 800 (1971) ............................................................................................ 16

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .......................................................................................... 1, 10

*Webb v. Carter's Inc.*,
   272 F.R.D. 489 (C.D. Cal. 2011)......................................................................... 17

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................................. 20

**Rules**

Fed. R. Civ. P. 23 ..............................................................................................*passim*

1  Defendant Mizuho Bank, Ltd. ("Mizuho") respectfully submits this

2  memorandum of law and the accompanying Declaration of John F. Cove, Jr.

3  ("Decl.") in opposition to plaintiff Joseph Lack's motion for class certification.

4  Docket Entry ("DE") 86.[1]

5  ## PRELIMINARY STATEMENT

6  Fact and expert discovery in this case have nearly concluded, and the trial

7  date is fast approaching.  Yet Lack has failed to meet his burden to demonstrate

8  "through evidentiary proof" that his proposed class meets the requirements of Rule

9  23.  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

10  First, Lack is unable to fairly and adequately protect the interests of other

11  proposed class members.  The unique facts surrounding Lack's attempt at funding

12  his Mt. Gox account just days after Mt. Gox announced a suspension of bitcoin

13  withdrawals and days before Mt. Gox collapsed, as well as the recent rejection of his

14  claim in Mt. Gox's civil rehabilitation proceeding in Japan, distinguish his claim and

15  defenses from those of other potential class members.  The idiosyncratic facts of

16  Lack's claim mean he cannot satisfy adequacy and typicality under Rule 23(a).

17  Second, Lack ignores the many individual issues that pervade his only claim

18  against Mizuho—a claim for fraudulent concealment.  Lack continues to rely on

19  unsupported assertions that the district court in Illinois rejected in a related case and

20  that are flatly contradicted by the undisputed evidence.  On the facts presented here,

21  materiality, knowledge, reliance, and causation cannot be established by classwide

22  proof.  Where factual issues bear on class certification, as they do here, the Court

23  must "probe behind the pleadings," conduct a "rigorous analysis," and receive

24  evidence "before coming to rest on the certification question."  *Wal-Mart Stores,*

25  *Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The Court must be satisfied that Lack has

26  identified facts, not unsubstantiated allegations, to meet Rule 23's requirements.  *Id.*

27  _____

28  [1] Mizuho continues to contest the Court's jurisdiction over it in this case.  Nothing herein is intended to waive that position, which is expressly preserved for appeal.

DEF. MIZUHO'S OPPOSITION TO           CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

Third, Lack fails to present a reliable classwide method to determine damages for all the members of the putative class tied to his theory of liability.  Indeed, he has not even submitted an expert report showing how to do so.

Finally, Lack ignores the fact that a pending Japanese proceeding akin to a reorganization in bankruptcy is likely to make other proposed class members whole because the post-bankruptcy rise in the value of the bitcoin has given the trustee the means to fully reimburse all approved claims of former Mt. Gox users.  Class treatment is not a superior means of deciding the claims of either those putative class members who may recover fully, with interest, in the Japanese proceeding, or putative class members whose claims are denied due to individualized issues.

**FACTS**[2]

### A.   Mt. Gox and Mizuho

As of the spring of 2013, Mt. Gox and its U.S. subsidiary, Mutum Sigillum LLC, used various banks and payment processors, including Sumitomo Mitsui Bank, Wells Fargo, Dwolla, OKPAY, and Mizuho, to send funds to its customers in the U.S.[3]  In that period, both the Japanese Financial Services Agency and several banks began asking questions or raising concerns about money transfers involving Mt. Gox.[4]  In May 2013, the U.S. Department of Homeland Security ("DHS")

---

[2]  Lack's "Factual Background" contains unsupported assertions based entirely on unreliable and inadmissible sources.  *See, e.g.*, Lawson Decl., Exs. 2 and 9.  Because these exhibits contain self-serving hearsay from defendant Mark Karpeles, whom Lack alleges to be dishonest, the Court should disregard these exhibits when deciding this motion.  *See Charlebois v. Angels Baseball, LP*, 2011 WL 2610122, at *8 (C.D. Cal. June 30 2011) (declining to certify a class on the basis of "unreliable, hearsay-based declarations"); *Junod v. NWP Servs. Co.*, 2016 WL 6306030, at *3 (C.D. Cal. July 18, 2016) (same).

[3]  Dwolla Account Seizure Warrant, Decl., Ex. 5 at 2-3; Withdrawals and Deposits, Mt. Gox Support, Decl., Ex. 6 at 6-7, 9; Williams Report, Decl., Ex. 7 at ¶ 32 n. 45, ¶¶ 51, 53.

[4]  *See* Imaizumi Deposition Tr., Decl., Ex. 8 at 46:16-55:12, 92:8-95:7; Mizuho Bank Ltd.'s Second Supplemental Responses to Plaintiffs' First Set of Interrogatories, Decl., Ex. 9 at 10-11.

---

DEF. MIZUHO'S OPPOSITION TO     2     CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

seized $5 million from Mutum Sigillum's and Dwolla's bank accounts because Mutum Sigillum and Dwolla were operating as unlicensed money service businesses in violation of U.S. law.[5]  DHS's actions were widely publicized.[6]

Based on communications with other banks and regulatory actions against Mt. Gox and its U.S. subsidiary, Mizuho determined that continuing to do business with Mt. Gox created risks for Mizuho and attempted to terminate its relationship with Mt. Gox by mutual agreement.[7]  When Mt. Gox refused, Mizuho determined that it did not have legal grounds to reject incoming wires into Mt. Gox's account, but that it could and should stop sending outbound wires from Mt. Gox's account.[8]  After meeting with Mt. Gox and giving it advance warning, Mizuho stopped sending U.S. dollar wire transfers from Mt. Gox's account on June 21, 2013.[9]  Over the next several months, Mizuho repeatedly asked Mt. Gox to use other banks for customer deposits.[10]  Despite repeatedly assuring Mizuho that it had established new banking relationships for deposits and would instruct its customers to send deposits to its accounts at these banks, Mt. Gox did not follow through.[11]  Mizuho continued to

---

[5] *See* Dwolla Account Seizure Warrant, Decl., Ex. 5; "Feds Seize Another $2.1 Million from Mt. Gox," Decl., Ex. 10.

[6] *See* "Feds Seize Another $2.1 Million from Mt. Gox," Decl., Ex. 10; "Why are the feds seizing Mt. Gox and Dwolla funds?," Decl., Ex. 11.

[7] *See* Mizuho Transaction History Record Sheet, June 7, 2013, Decl., Ex. 12; *see also* Imaizumi Deposition Tr., Decl., Ex. 8 at 46:16-49:16, 85:25-86:10, 96:20-98:23, 143:14-23.

[8] *See* Email re: Company M matter (Status Report), attaching June 21, 2013 Progress Report, Decl., Ex. 13; Imaizumi Deposition Tr., Decl., Ex. 8 at 86:18-87:20.

[9] *See* Imaizumi Deposition Tr., Decl., Ex. 8 at 99:4-11.

[10] *See* Mizuho Bank Ltd.'s Second Supplemental Responses to Plaintiffs' First Set of Interrogatories, Decl., Ex. 9 at 12; Mizuho Transaction History Record Sheet, June 28, 2013, Decl., Ex. 14; Mizuho Interview/work record, July 29, 2013, Decl., Ex. 15; Mizuho Interview/work record, August 19, 2013, Decl., Ex. 16; Mizuho Meeting/Business Record, September 30, 2013, Decl., Ex. 17; Email re: Progress and future transition to other banks, October 31, 2013, Decl., Ex. 18.

[11] Mizuho Bank Ltd.'s Second Supplemental Responses to Plaintiffs' First Set of

---

DEF. MIZUHO'S OPPOSITION TO     3     CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

receive inbound cash wire transfers designating Mt. Gox as the beneficiary until Mt. Gox's collapse on February 24, 2014.[12]

At the same time, Mt. Gox did use other banks to send U.S. dollar withdrawals to customers, and informed Mizuho that it was doing so.[13] Within days after Mizuho discontinued sending wire transfers for Mt. Gox (*i.e.*, by June 26, 2013), Mt. Gox already sent U.S. dollars to its U.S. customers through another bank.[14] From June 26, 2013 until Mt. Gox's bankruptcy filing in February 2014, Mt. Gox processed 560 wires, sending at least $26.2 million in U.S. dollars to Mt. Gox users in the U.S. through another bank, Japan Post Bank, and its correspondent bank in the U.S., Deutsche Bank.[15] Of that $26.2 million, $7.5 million went to nearly 90 California-based accounts.[16] For context, during that same period, Mt. Gox users in the U.S. deposited only $7.7 million into Mt. Gox's account at Mizuho.[17] Thus, Lack's central factual predicate for commonality—that "Mizuho was the only route for currencies into and out of Mt. Gox for Mt. Gox's American customers" (Pl. Br. at 4)—is incorrect.

---

Interrogatories, Decl., Ex. 9 at 12; Mizuho Interview/work record, August 19, 2013, Decl., Ex. 16; Email re: Progress and future transition to other banks, October 31, 2013, Decl., Ex. 18; Mizuho Case Name:  Interview/Operational Records, November 20, 2013, Decl., Ex. 19.

[12] Mizuho Transaction History Record Sheet, June 28, 2013, Decl., Ex. 14; Mizuho Bank Ltd.'s Second Supplemental Responses to Plaintiffs' First Set of Interrogatories, Decl., Ex. 9 at 12; Mizuho Inbound U.S. Wires (MIZ_0002568), Decl., Ex. 20.

[13] Imaizumi Deposition Tr., Decl., Ex. 8 at 100:1-15; Japan Post Bank Outbound Wires (DB_0000001), Decl., Ex. 21; Mizuho Bank Ltd.'s Responses and Objections to Plaintiff Anthony Motto's First Set of Interrogatories, Decl., Ex. 22 at 13-14; Mizuho Interview/work record, July 17, 2013, Decl., Ex. 23.

[14] *See* Japan Post Bank Outbound Wires (DB_0000001), Decl., Ex. 21.

[15] *See id.*; Williams Report, Decl., Ex. 7 at ¶ 47 & Ex. 6.

[16] Strombom Report, Decl., Ex. 25 at ¶ 7.

[17] *See* Mizuho Inbound U.S. Wires (MIZ_0002568), Decl., Ex. 20; Strombom Report, Decl., Ex. 25 at ¶ 39.

Mt. Gox alone decided which withdrawal requests Mt. Gox would honor, how many withdrawal requests it would process each day, and how much money it would send to its U.S. customers.  Mizuho was not involved in this process at all after June 20, 2013, and did not know when a Mt. Gox customer made a request, nor how or when Mt. Gox decided to honor that request.[18]  All Mizuho knew is that Mt. Gox was working with a new banking partner and wiring money to its customers.[19]

Based on a review of records from Deutsche Bank, Mt. Gox's responses to its customers' withdrawal requests appear to have been erratic.  On some days during the proposed class period, Mt. Gox honored as many as 19 requests; on others, it did not respond to any.[20] Whether this was because Mt. Gox did not have the funds on those days, did not want to let go of the funds on those days, or was being selective about whom to pay is unknown.  Mt. Gox's approach caused delays, but it regularly updated its customers about those delays and offered expedited withdrawals for a five percent fee.[21]  Specifically, Mt. Gox made the following announcements on its website regarding delays and suspensions in processing withdrawals of both fiat currency and bitcoin:

- June 20, 2013:  Mt. Gox suspends U.S. dollar withdrawals temporarily;[22]
- July 4, 2013:  Mt. Gox resumes honoring U.S. dollar withdrawal requests, with a two-week backlog;[23]

---

[18] Imaizumi Deposition Tr., Decl. Ex. 8 at 90:7-16.

[19] Imaizumi Deposition Tr., Decl., Ex. 8 at 89:10-90:4.  In addition to Japan Post Bank, Mt. Gox had bank accounts at Rakuten Bank, Japan Net Bank, Yachiyo Bank, and Resona Bank.  *See* Report to the Tokyo District Court, Decl., Ex. 26 at List of Assets, Item No. 1.

[20] *See* Japan Post Bank Outbound Wires (DB_0000001), Decl., Ex. 21.

[21] Compilation of email communications (Pearce01455-1459), Decl., Ex. 27 at Pearce001458.

[22] Statement Regarding Temporary Hiatus on U.S. Dollar Withdrawals, Decl., Ex. 1.

[23] Statement on Resumption of Withdrawals and Improved Banking, Decl., Ex. 2.

- January 2014:  Mt. Gox announces a "slight backlog" in processing international wire withdrawals and more than four-week delays depending on amount;[24]

- January 31, 2014:  Mt. Gox discloses that bitcoin withdrawal delays are reportedly being experienced by some users;[25]

- February 4, 2014:  Mt. Gox reports bitcoin withdrawal delays affecting a limited number of users, primarily with larger transactions;[26] and

- February 7, 2014:  Mt. Gox temporarily suspends all bitcoin withdrawals.[27]

In addition, Mt. Gox routinely communicated by email directly with its customers, including Lack, about a host of issues, including issues related to deposits and withdrawals.[28]  Mt. Gox never discussed with or previewed for Mizuho any press release or customer communication that addressed withdrawals.[29]

Mt. Gox users in the U.S. could also get their investments out of Mt. Gox by purchasing bitcoin and transferring it to (i) another exchange; (ii) the Mt. Gox user's private wallet; (iii) a third party's wallet in exchange for goods and/or services; or (iv) a third party such as BitPay, where bitcoin could be converted to fiat currency and used to purchase goods and services.  Mt. Gox users could also transfer "trapped bitcoin" (*i.e.*, bitcoin held at Mt. Gox after it suspended bitcoin withdrawals on February 7, 2014) to a third party called Bitcoin Builder, which bought "trapped

---

[24] MtGox – Bitcoin Exchange, Notes on International Withdrawals, Decl., Ex. 3.

[25] Statement Regarding BTC Withdrawal Delays, January 31, 2014, Decl., Ex. 28.

[26] Update – Statement Regarding BTC Withdrawal Delays, February 4, 2014, Decl., Ex. 29.

[27] Statement Regarding BTC Withdrawal Delays, February 7, 2014, Decl., Ex. 30.

[28] *See, e.g.*, Compilation of email communications (Lack 000029- 31), Decl., Ex. 4 at Lack 000030-31.

[29] *See* Imaizumi Deposition Tr., Decl., Ex. 8 at 158:5-10; Mizuho Interview/work record, August 19, 2013, Decl., Ex. 16; *see also* Lawson Decl., Ex. 2 at Edelson007122. Contrary to the characterization in his brief, the documents Lack cites in his brief show that Mt. Gox did not consult with Mizuho about communications with its customers regarding withdrawals and instead consulted with its lawyers at Baker & McKenzie.  *See* Lawson Decl., Ex. 2 at Edelson007122.

---

DEF. MIZUHO'S OPPOSITION TO       6       CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

1  bitcoin" at a discount.[30]

2  **B.    Plaintiff Joseph Lack**

3  Lack signed up for an account with Mt. Gox on December 7, 2013, after

4  reviewing news releases and other materials on Mt. Gox's website, but his account

5  was not verified or approved by Mt. Gox until January 21, 2014 because Mt. Gox

6  had a backlog of new account openings and a limited number of people to process

7  new accounts.[31]  On January 22, 2014, Lack wired $40,000 from his Wells Fargo

8  account to Mt. Gox's account at Mizuho.[32]  Before doing so, he read news articles

9  regarding Mt. Gox and regularly checked Mt. Gox's website for developments and

10  updates.[33]  Lack acknowledged that, as of January 17, 2014—before his deposit—

11  Mt. Gox informed customers that it had a backlog processing withdrawal requests

12  and international withdrawals could take up to four weeks or more.[34]

13  After Lack wired the money to Mt. Gox, his funds did not show up *in his Mt.*

14  *Gox account*, even though Mizuho credited the funds to *Mt. Gox's account* on

15  January 23, 2014.[35]  Lack admitted that Mizuho did everything it was required to do

16  in connection with depositing his money into the Mt. Gox account.[36]  Lack

17  communicated with Mt. Gox in February 2014 about his missing funds, but he did

18  not believe Mt. Gox was being truthful and he threatened to go to law

19  

20  _____

[30] *See* Williams Report, Decl., Ex. 7 at ¶¶ 48-54; Strombom Report, Decl., Ex. 25 at

21  ¶ 19.

[31] Lack Deposition Tr., Decl., Ex. 31 at 95:14-19, 100:4-8, 100:15-19.

22  
[32] Compl. ¶ 46; Lack Deposition Tr., Decl., Ex. 31 at 104:23-25.  Lack testified that

23  Wells Fargo charged him a $45 fee to wire money to Mt. Gox, but he was not aware
of any fee charged by Mizuho.  *Id*. at 37:6-11, 166:24-167:15.

24  [33] Lack Deposition Tr., Decl., Ex. 31 at 108:22-109:17.

25  [34] *Id*. at 159:14-161:25, 164:10-166:22; MtGox – Bitcoin Exchange, Notes on

26  International Withdrawals, Decl., Ex. 3.

[35] Lack Deposition Tr., Decl., Ex. 31 at 12013-16; Mizuho Inbound U.S. Wires

27  (MIZ_0002568), Decl., Ex. 20 at Row 5003.

[36] Lack Deposition Tr., Decl., Ex. 31 at 138:25-139:24.

28

enforcement.[37]  During this time, Lack read about withdrawal difficulties by Mt. Gox's customers.[38]  Lack testified that if the $40,000 had shown up his Mt. Gox account, he planned to buy bitcoin and leave it in his Mt. Gox account because he viewed bitcoin as a long-term investment.[39]  Lack testified that he was interested in the ability to move bitcoin to one's personal wallet and from one platform to another at any time, and the ability make purchases with digital currency.[40]

Lack initially tried to submit a claim in Mt. Gox's bankruptcy,[41] but he could not do so because his Mt. Gox account reflected a $0 balance.[42]  Lack called a consumer hotline for Mt. Gox users and "explained to them my unique situation, how I was different than most other individuals, my unique situation being that I had yet to see any funds credited to my account."[43]  He then made a "verbal complaint" and was told it would be submitted to the Japanese bankruptcy court.[44]  After Mt. Gox's Japanese bankruptcy was converted to a civil rehabilitation proceeding in June 2018, Lack filed a Proof of Rehabilitation Claim in October 2018 in the total amount of $50,362.73, including over $10,360 in "delay damages" from February 26, 2014 when Mt. Gox stopped operating until June 21, 2018.[45]  On March 20, 2019, Lack received notice from the Mt. Gox Rehabilitation Trustee that his claim was disapproved "on the ground that such amount does not exist."[46]

---

[37] *Id*. at 118:2-12; *see also* Compilation of email communications (Lack 000029-31), Decl., Ex. 4.

[38] Lack Deposition Tr., Decl., Ex. 31 at 112:23-113:23.

[39] *Id*. at 120:17-121:3, 123:19-23, 124:24-125:4, 125:20-25, 127:7-17.

[40] *Id*. at 121:24-122:8, 169:25-170:2.

[41] *Id*. at 145:21-23, 150:3-6.

[42] *Id*. at 146:6-22.

[43] *Id*. at 146:7-10.

[44] *Id*. at 146:7-22.

[45] Proof of Rehabilitation Claim (J.LACK_000005-20), Decl., Ex. 32.

[46] Email from MtGox Bankruptcy Trustee to Joseph Lack (J.LACK_000022-25), Decl., Ex. 33.

### C.    Procedural Background

Before filing this action on January 24, 2018, Lack asserted his claims against Karpeles and Mizuho in March 2014 by joining an existing suit that his counsel, Edelson PC ("Edelson"), had filed on behalf of an Illinois resident in the U.S. District Court for the Northern District of Illinois (the "Illinois Action").  On December 11, 2017, following the completion of fact discovery, the Illinois court dismissed Lack's (and Gregory Pearce's) claims for lack of personal jurisdiction.

Subsequently, the Illinois court denied named plaintiff Anthony Motto's motion for class certification that, other than its nationwide scope, was virtually identical to the California class that Lack seeks to certify here.  *Greene v. Mizuho Bank, Ltd.*, 327 F.R.D. 190 (N.D. Ill. 2018).  On facts similar to the facts pertaining to Lack, the Illinois court determined that Motto failed to meet the adequacy and typicality requirements of Rule 23(a) because he was subject to unique defenses not applicable to the class as a whole.  *Id*.  The Illinois court also found that, contrary to Motto's allegation (parroted in Lack's Complaint ¶ 23), Mizuho was *not* the exclusive bank through which Mt. Gox could receive its users' deposits and satisfy their withdrawal requests.  Rather, "Mt. Gox relied at different points in time on other financial institutions and payment processors, including Japan Post Bank, Dwolla, and OK Pay, to facilitate fiat currency deposits and withdrawals" and "[f]rom June 2013 until February 2014, when Mt. Gox ceased operations and declared bankruptcy, Mt. Gox account holders in the U.S. could withdraw fiat currency using other intermediaries."  *Greene*, 327 F.R.D. at 193.

### D.    The Japanese Rehabilitation Proceeding

On June 22, 2018, Mt. Gox's Japanese bankruptcy was converted to a new civil rehabilitation proceeding.  As the parties jointly explained in their October 1, 2018 Rule 26(f) Report, the Rehabilitation Trustee announced that the Mt. Gox estate would likely "have sufficient assets to pay in full the claims of Mt. Gox users who lost money or bitcoin when Mt. Gox collapsed, including Lack and potential

DEF. MIZUHO'S OPPOSITION TO        9    CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

1  members of the putative class alleged here."  DE 66 at 1-2.

2  **ARGUMENT**

3      The party seeking class certification bears the burden of establishing

4  conformity with the requirements of Rule 23, and must do so by producing facts

5  "affirmatively demonstrat[ing]" that certification is warranted.  *Comcast*, 569 U.S.

6  at 33; *Wal-Mart*, 564 U.S. at 350.  In addition to providing factual proof that the

7  numerosity, commonality, typicality and adequacy requirements of Rule 23(a) are

8  met, a party seeking to certify a damages class pursuant to Rule 23(b)(3), as Lack

9  does here, must also show through "evidentiary proof" that "questions of law or fact

10  common to class members predominate over any questions affecting only individual

11  members" and that "a class action is superior to other available methods for fairly

12  and efficiently adjudicating the controversy."  *Comcast*, 569 U.S. at 33; Fed. R. Civ.

13  P. 23(b)(3).  Here, certification is not appropriate because Lack has not proved and

14  cannot prove that he satisfies the typicality and adequacy requirements of Rule

15  23(a), or the predominance and superiority requirements of Rule 23(b)(3).

16  **I.    Lack Is Subject To Unique Defenses And Therefore Does Not Meet The**
17  **       Typicality Or Adequacy Requirements Of Rule 23(a)**

18      Lack does not satisfy the adequacy and typicality requirements of Rule 23(a)

19  because he is subject to unique defenses that threaten to become the focus of the

20  litigation.[47]  "[C]lass certification should not be granted if 'there is a danger that

21  absent class members will suffer if their representative is preoccupied with defenses

22  unique to it.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

23      Lack testified that he attempted to fund his new Mt. Gox account with a

24  $40,000 deposit made on January 22, 2014, when delays and suspensions in both

25  U.S. dollar and bitcoin withdrawals from Mt. Gox were well known and publicly

26  disclosed by Mt. Gox on its website.  *See* Lack Deposition Tr., Decl. Ex. 31 at

27  ────────────────
28  [47] Lack's unsupported assertion that Mizuho conceded that he is an appropriate class
    representative for similar claims (Pl. Br. at 13) has no factual basis.

104:23-25, 108:22-109:17, 159:14-161:25, 164:10-166:22.  Lack also testified that if the $40,000 had been credited to his Mt. Gox account, he planned to buy bitcoin and leave it in his Mt. Gox account because he viewed bitcoin as a long-term investment.  *Id.* at 120:17-121:3, 123:19-23, 124:24-125:4, 125:20-25, 127:7-17.  This testimony—that Lack was aware of the delays and suspensions of U.S. dollar and bitcoin withdrawals when he made his deposit and had no intention of withdrawing fiat currency from Mt. Gox—will make it difficult, if not impossible, for Lack to prove that (1) the allegedly concealed fact that Mizuho stopped accepting fiat currency withdrawal requests from Mt. Gox was material to Lack's decision to invest in Mt. Gox, (2) he would have acted differently if he had known that fact, and (3) he suffered injury caused by Mizuho.

Based on, *inter alia*, analogous testimony by proposed class representative Motto in Illinois—that he had no intention of withdrawing fiat currency from Mt. Gox—the Illinois court denied class certification because Motto was differently situated than other class members.  *Greene*, 327 F.R.D. at 195-96.  The Illinois court concluded that "Motto's testimony thus would allow Mizuho to present a defense applicable only to him, or at most to him and a small subset of other [ ]class members:  that he was not injured by Mizuho's decision to stop processing outbound wire transfers of fiat currency from Mt. Gox's account because he did not rely on the presence of that functionality in deciding to purchase bitcoin on the Mt. Gox exchange."  *Id.* at 196.  That conclusion applies equally to Lack.  *See Backus v. ConAgra Foods, Inc.*, 2016 WL 7406505, at *4 (N.D. Cal. Dec. 22, 2016) (where class representative was vulnerable to non-reliance defenses, it was "predictable that this litigation will focus on arguments and facts unique to him rather than generate common answers apt to drive resolution of the dispute on a classwide basis").

In addition to his knowledge of withdrawal delays and his intent to hold bitcoin, Lack's specific problems with his Mt. Gox account create unique defenses regarding the elements of causation and damages.  Lack himself described his

DEF. MIZUHO'S OPPOSITION TO     11   CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

situation as "unique" and "different from most other individuals" because he "had yet to see any funds credited to [his] account" at the time Mt. Gox ceased operations, even though Mizuho deposited the funds into Mt. Gox's account and did everything it was required to do in connection with the deposit. Lack Deposition Tr., Decl. Ex. 31 at 146:7-10; Mizuho Inbound U.S. Wires (MIZ_0002568), Decl., Ex. 20 at Row 5003 (showing receipt of $40,000 into Mt. Gox's account as of January 23, 2014). The timing and circumstances of Lack's investment in Mt. Gox highlight "the unique and substantial vulnerability of [Lack's] position in this case." *Backus*, 2016 WL 7406505, at *4. Finally, the Rehabilitation Trustee's disapproval of Lack's claim because "such amount does not exist" underscores his dissimilarity from other proposed class members whose deposits were credited.

Lack's claim is not typical of the claims of other proposed class members, and Lack cannot fairly and adequately protect the interests of absent proposed class members as a class representative. *Id*. at *5 (proposed class representative's unique defenses defeated both typicality and adequacy).

## II. Certification Is Inappropriate Because Individual Issues Predominate

The predominance requirement of Rule 23(b)(3) "is even more demanding" than the commonality requirement of Rule 23(a)(2). *Comcast*, 569 U.S. at 34. Where issues central to establishing liability are necessarily individual and fact-intensive, the predominance requirement is not satisfied. *Arthur v. United Indus. Corp.*, 2018 WL 2276636, at *10 (C.D. Cal. May 17, 2018) (citing *Vinole v. Countrywide Home Loans, Inc*., 571 F.3d 935, 947 (9th Cir. 2009)).

### A. Individual Questions Relating To Materiality, Knowledge, Reliance, Misstatement, Reliance and Causation Predominate

Several critical elements of fraudulent concealment—including whether the allegedly concealed information was material to the class member, whether the class member knew that information before making his or her deposit, whether the class member would have changed his or her behavior if he or she knew the allegedly

1   concealed fact, whether the class member suffered any injury, and if so, whether that

2   injury can be attributed to Mizuho's alleged conduct—necessarily will require

3   individual inquiry and result in different answers across different class members.

4   Where, as with each of the foregoing questions, the members of a proposed class

5   will need to present evidence that varies from member to member, the question is an

6   individual question. *Cole v. Gene by Gene, Ltd.*, 735 F. App'x 368 (9th Cir. 2018)

7   (affirming denial of class certification where individual questions regarding

8   disclosure, consent, and damages predominated); *Davidson v. O'Reilly Auto Enters.,*

9   *LLC*, 2017 WL 8292782, at *5 (C.D. Cal. Dec. 15, 2017) (Klausner, J.) (denying

10  class certification where common issues did not predominate).

11      *Materiality*.  To prevail against Mizuho, each potential class member must

12  prove that the fact that Mizuho was no longer transmitting wire transfers for Mt.

13  Gox was material to his or her decision to deposit funds with Mt. Gox even though

14  (i) Mt. Gox was still honoring U.S. dollar withdrawal requests through Japan Post

15  Bank, (ii) Mt. Gox (and news reports) had disclosed significant delays in fiat

16  currency withdrawals, and (iii) Mt. Gox offered expedited fiat currency withdrawals

17  for a fee.  As a threshold matter, in light of Mt. Gox's use of Japan Post Bank to

18  send funds to U.S. customers and the public disclosures and media reports about

19  delays, there is no evidence that any material information was withheld.  But even if

20  the non-disclosure of the change in the relationship were material to some Mt. Gox

21  customers, the materiality inquiry is still an individual one because, as described in

22  the expert report of Bruce Strombom, whether or not it was important to proposed

23  class members to know that Mt. Gox was using Japan Post Bank instead of Mizuho

24  to send funds to the U.S., would differ from one customer to another, depending on

25  the customer's individual circumstances, including, for example, how the customer

26  planned to invest in Mt. Gox, what the customer planned to do with his or her

27  bitcoin, and the importance, if any, of being able to withdraw fiat currency quickly

28  (or at all).  Strombom Report, Decl., Ex. 25 at ¶¶ 50, 56-58.  While some proposed

DEF. MIZUHO'S OPPOSITION TO       13   CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

class members might have deposited U.S. dollars intending to withdraw them later, others might have deposited funds with Mt. Gox intending to purchase bitcoin as a long-term investment (like Lack) or to transfer the bitcoin out of Mt. Gox (like Motto).  Like Lack and Motto, customers who intended to convert cash to bitcoin and hold it or transfer it as bitcoin would not have cared whether Mt. Gox was using Mizuho or another bank to send U.S. dollar wires.  *See id.* at ¶¶ 47, 56.[48]  The need for individual inquiries about whether the allegedly concealed information was material to each putative class member precludes certification.  *See Arthur*, 2018 WL 2276636, at *12; *Mezzadri v. Med. Depot, Inc.*, 2016 WL 5107163, at *7 (S.D. Cal. May 12, 2016) (common issues did not predominate where expert evidence demonstrated "that materiality varies markedly between" different class members).

*Knowledge*.  Proposed class members must prove they were unaware of their purported inability to withdraw U.S. dollars from Mt. Gox and the identity of the bank or banks handling wire transfers for Mt. Gox.  This, too, is an individual inquiry that will not yield uniform answers across the proposed class.  Indeed, as described above, information about withdrawal delays at Mt. Gox was widely available to Mt. Gox users, including Lack, during the alleged class period.  And, as Dr. Strombom notes, some Mt. Gox users had individual communications with Mt. Gox about those delays.  *See* Strombom Report, Decl., Ex. 25 at ¶¶ 10, 35.

The communications between Lack's former co-plaintiff in Illinois, Gregory Pearce, and Mt. Gox are instructive.  *See* Compilation of email communications (Pearce01455-1459), Decl., Ex. 27.  On January 30, 2014, Pearce emailed Mt. Gox customer support regarding a funds withdrawal request he made the day before. After an exchange of emails, Mt. Gox responded that "international withdrawals are

---

[48] Lack contends that "information about Mizuho's decision to stop processing withdrawals from Mt. Gox's account was material to the decision to invest in bitcoin on Mt. Gox" (Pl. Br. at 8), but the testimony he cites does not support that contention; it relates to how Lack was uniquely situated because his deposit did not show up in his Mt. Gox account (Lack Deposition Tr., Decl., Ex. 31 at 146:7-24).

currently delayed and may take [a] few weeks to get back to normal.  Please be assured that the withdrawals will be based on the queuing system." *Id.* at Pearce001458.  In response, Pearce wrote, "[it] may be faster to use my money to repurchase bitcoins and then transfer them to another bitcoin wallet to sell for withdrawal." *Id.*  Mt. Gox responded that it did "not have an ETA of when the withdrawals will be processed," but noted that Mt. Gox offered "a manual withdrawal processing method" for customers "who need funds sooner than the normal schedule . . . with 5% extra fee on the total withdrawal amount on each withdrawal." *Id.*  On February 11, 2014, Pearce asked Mt. Gox to cancel his withdrawal request and restore his $5,900 to his account because "I can then purchase bitcoin and then transfer them out." *Id.* at Pearce001457.  Mt. Gox canceled Pearce's withdrawal request and credited the funds back to his account. *Id.* On February 21, 2014, Pearce asked about the ongoing suspensions of bitcoin withdrawals and noted that, after he transferred his bitcoin from Mt. Gox to the bitcoin exchange in the U.S. where he had an account (CampBX), he "can then get cash out from my American account rather quickly."  *Id.* at Pearce001456; Pearce Deposition Tr., Decl., Ex. 24, at 83:19-87:7.  Mt. Gox went dark three days later.

Although Pearce is not a member of the proposed class, his communications with Mt. Gox provide a window into what Mt. Gox told different customers about withdrawal delays, what Mt. Gox customers knew or could have known about delays, and what Mt. Gox customers knew or could have known about how to withdraw their funds from Mt. Gox, for example, by transferring bitcoin out of Mt. Gox or using Mt. Gox's expedited service.  Responses to each of these inquiries would vary by individual, and can only be established through individual inquiry.

*Misstatement or Omission*.  Even the alleged misstatement of omission at the heart of each class member's claim differs.  Though Lack argues this is a uniform omission case, Pearce's experience shows that what Mt. Gox told its customers about withdrawal delays was far from uniform across all putative class members.

DEF. MIZUHO'S OPPOSITION TO     15   CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

Determining what representations each putative class member was exposed to prior to depositing money with Mt. Gox and what conversations each one had with Mt. Gox, if any, "will require a highly individualized inquiry," precluding a finding that common issues predominate. *In re: First Am. Home Buyers Prot. Corp.*, 313 F.R.D. 578, 606 (S.D. Cal. 2016), *aff'd sub nom. Carrera v. First Am. Home Buyers Prot. Co.*, 702 F. App'x 614 (9th Cir. 2017).

*Reliance*.  Lack contends that reliance can be presumed for all putative class members because they were allegedly subject to concealment of the same information.  Pl. Br. at 15.  Lack is wrong both legally and factually.  First, as a matter of substantive law, "California courts have always required plaintiffs in actions for deceit to plead and prove the common law element of actual reliance." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1092 (1993) (declining to adopt a general presumption of reliance in fraud cases under California law).  As shown above, Lack himself cannot prove actual reliance in this case—*i.e.*, that "had the omitted information been disclosed, [he] would have been aware of it and behaved differently." *Id*. at 1093.  And, contrary to Lack's reading of *Vasquez v. Superior Court*, 4 Cal. 3d 800 (1971), and *Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355 (1976), "nothing in either case so much as hints that a plaintiff may plead a cause of action for deceit without alleging actual reliance." *Mirkin*, 5 Cal. 4th at 1095.  As the California Supreme Court clarified in *Mirkin*, *Vasquez* and *Occidental* stand only for the proposition that "when the same material misrepresentations have actually been communicated to each member of a class, an inference of reliance arises as to the entire class." *Id*.  However, that does not excuse the proposed class representative from establishing his/her own actual reliance. *See Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 465-66 (N.D. Cal. 2012) (cited in Pl. Br. at 16).

Second, for purposes of Rule 23(b)(3)'s predominance requirement, the Ninth Circuit has similarly made clear that classwide reliance cannot be presumed when the evidence is unclear that all class members were subject to the same misstatement

16

or omission.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595-96 (9th Cir. 2012); *see also Mezzadri*, 2016 WL 5107163, at *7-8.  But, as shown above, each putative class member was aware of different facts about the delays and whether they relied on those facts (or omissions) cannot be determined on a classwide basis.  Third, where, as here, "individual issues as to materiality predominate, the record will not permit [ ] an inference" of reliance as to the entire class.  *Webb v. Carter's Inc.*, 272 F.R.D. 489, 502 (C.D. Cal. 2011); *Mezzadri*, 2016 WL 5107163, at *8.[49]

   *Causation*.  As Lack's experience shows, the alleged losses of any proposed class member may not be attributable to Mizuho's alleged omission.  In Lack's case, his alleged loss may have been caused by the fact that (i) through no fault of Mizuho his deposit was never credited to his Mt. Gox account; and (ii) Mt. Gox went dark on February 24, 2014 before he executed his plan to purchase bitcoin to hold as a long-term investment.  For these reasons, Mr. Strombom has opined that Lack's loss of the $40,000 he deposited by wire transfer to Mt. Gox's account at Mizuho is not causally connected to any alleged wrongdoing by Mizuho.  Strombom Report, Decl., Ex. 25 at ¶ 60.  In addition, other proposed class members may have experienced some or all of the same, similar or other circumstances that would be relevant in determining whether their claimed losses were the result of any alleged wrongdoing by Mizuho.  *Id.* at ¶¶ 57-59.  For example, any proposed class member's alleged losses could have been caused or affected by (i) Mt. Gox's decision to send funds to some U.S. customers on some days and none on other days; (ii) Mt. Gox's failure to allocate sufficient resources to processing customer withdrawal requests; (iii) the order in which Mt. Gox processed customers' withdrawal requests; (iv) the decision by some proposed class members to reject Mt.

---

[49] The cases cited by Lack are not to the contrary.  *See, e.g., Jordan*, 285 F.R.D. at 465 (presumption of reliance only available if the alleged omission or misstatement was uniformly material to and uniformly received by all class members, but class representative must establish his/her own actual reliance); *Mass. Mut. Life Ins. Co. v. Super. Ct.*, 97 Cal. App. 4th 1282, 1293-94 (4th Dist. 2002) (same).

DEF. MIZUHO'S OPPOSITION TO     17   CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

Gox's offer to expedite the withdrawal request for a fee; and (v) the date on which a proposed class member deposited funds and the proximity to when Mt. Gox collapsed.  These circumstances can only be ferreted out by individual inquiry; therefore, causation cannot be proved on a classwide basis.

### B.    Individual Questions About Damages Predominate

The proposed class also cannot be certified because Lack has not offered any classwide basis or method on which to calculate and award damages (if any) attributable to the alleged fraudulent concealment by Mizuho.  Under Rule 23(b)(3), a district court must conduct a rigorous analysis to determine whether the plaintiff has introduced admissible evidence to show that the case is susceptible to awarding damages on a classwide basis.  *Comcast*, 569 U.S. at 34; *Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016) ("In interpreting *Comcast*, we have stated, '[A] methodology for calculation of damages that [can]not produce a class-wide result [i]s not sufficient to support certification.'") (citation omitted); *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, at *8 (C.D. Cal. Feb. 13, 2018) ("Bruton must present a damages model that is 'consistent with [her] liability case.'").

Lack's failure to even offer a model or method for measuring damages attributable to Mizuho's alleged fraud is not surprising, because he cannot show any common injury suffered across all members of his proposed class.  The absence of any common injury is apparent from Lack's proposed class definition—"all California residents who wired money to Mt. Gox KK's bank account at Mizuho between June 20, 2013 and February 24, 2014"—which does not specify how any member of the proposed class was harmed in any particular way, much less in a common way.  A customer's deposit of money into Mt. Gox during the proposed class period does not mean that the customer suffered any harm.  The customer might have deposited funds, submitted a withdrawal request, and then received the funds from Mt. Gox through Japan Post Bank.  In fact, during the alleged class period, Mt. Gox fulfilled $7.5 million in withdrawal requests from a total of 88

DEF. MIZUHO'S OPPOSITION TO      18   CASE NO. 2:18-CV-00617-RGK-GJS
MOTION FOR CLASS CERTIFICATION

California accounts in just that way.  *See* Strombom Report, Decl., Ex. 25 at ¶ 7.  In addition, Mt. Gox customers might have bought bitcoin and transferred it to (i) another exchange, (ii) the individual's personal wallet, (iii) a third party's wallet in exchange for goods or services, (iv) a third party where bitcoin could be converted to fiat currency and used to purchase goods or services, or (v) Bitcoin Builder, after Mt. Gox suspended bitcoin withdrawals on February 7, 2014.  *See* Williams Report, Decl., Ex. 7 at ¶ 48; Strombom Report, Decl., Ex. 25 at ¶¶ 15-19.  Individuals who used any of these methods to withdraw funds and/or bitcoin did not suffer harm, as Lack conceded. Lack Deposition Tr., Decl., Ex. 31 at 241:11-242:13.

As in *Comcast*, a classwide measure of damages would not match Lack's theory of liability against Mizuho, because, as explained above, the record shows that depositors could and did withdraw funds in both fiat currency and bitcoin from Mt. Gox after Mizuho stopped transmitting wire transfers, and that Lack and many other Mt. Gox customers knew, at least as of January 17, 2014, that Mt. Gox was experiencing multi-week delays in sending funds to its customers in the U.S.  In other words, even under plaintiffs' theory, many, if not all, proposed class members *could not have been harmed* by any alleged conduct by Mizuho.  *See Otto v. Abbot Labs., Inc.*, 2015 WL 12776591, at *2 (C.D. Cal. Jan. 28, 2015).  Certification of Lack's proposed class is thus inappropriate under *Comcast*.[50]

### III.   Class Treatment Is Not A Superior Means Of Adjudication

Class treatment is not superior and class certification should be denied for three reasons.  First, as Lack conceded in the parties' Rule 26(f) Report, other members of the proposed class whose claims are approved by the Rehabilitation Trustee will likely recover in full any funds that they deposited and could not retrieve when Mt. Gox went bankrupt (plus "delay damages") in the rehabilitation

---

[50] The fatal flaw in this case is not the need for individual damages assessments, but rather that damages cannot be calculated on a classwide basis because Lack has not articulated a theory of liability supported by evidence of a common injury.

proceeding.  That proceeding is near completion, with claims already submitted and approved or disapproved.[51]  Where the proposed class members stand to recover in another pending proceeding, Rule 23(b)(3)'s superiority requirement is not met.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001).

Second, if Lack's alleged loss of $40,000 is indicative of class members' individual claims, the value at issue for each individual is not so insignificant as to prevent class members from pursuing claims individually.  *See Runyon v. Bostick Inc.*, 2017 WL 5988019, at *4 (C.D. Cal. Mar. 28, 2017) (Klausner, J.) ("Where, as here, each individual claim is allegedly worth *at least* $25,000, . . . putative class members have an important interest in bringing individual actions.") (emphasis in original).

Finally, a class action is not superior because of the difficulties in managing this case as a class action, none of which Lack has addressed.  *See Zinser*, 253 F.3d at 1192.  These include the many individual inquiries that will be required to prove the elements of each class member's claim, and the potential difficulties in obtaining Mt. Gox records needed to identify individuals in California who deposited cash after June 20, 2013, which of those individuals actually held bitcoin or U.S. dollars at Mt. Gox at the end of the alleged class period (and did not transfer it out prior to the end of the class period), and how much was held by each such individual.  *Id.*

For all of these reasons, the proposed class fails to meet Rule 23(b)(3)'s superiority requirement and cannot be certified.

### **CONCLUSION**

For the foregoing reasons, this Court should deny Lack's motion.

---

[51] *See* Notice of Submission of Statement of Approval or Disapproval on Exchange-Related Rehabilitation Claims (Mar. 19, 2019), https://www.mtgox.com/img/pdf/20190319_announcement_en.pdf.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

DATED:  March 25, 2019

SHEARMAN & STERLING LLP

   /s/ John F. Cove, Jr.
John F. Cove, Jr. (SBN 212213)
Emily V. Griffen (SBN 209162)
SHEARMAN & STERLING LLP
535 Mission Street, 25th Floor
San Francisco, CA 94105
Telephone: +1.415.616.1100
Facsimile: +1.415.616.1199
Email: john.cove@shearman.com
Email: emily.griffen@shearman.com

Jerome S. Fortinsky (admitted *pro hac vice*)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: +1.212.848.4000
Facsimile: +1.212.848.7179
Email: jfortinsky@shearman.com

*Counsel for Defendant Mizuho Bank, Ltd.*