RAFEY S. BALABANIAN (SBN – 315962)
rbalabanian@edelson.com
J. AARON LAWSON (SBN – 319306)
alawson@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: (415) 212-9300
Fax: (415) 373-9435

*Counsel for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| JOSEPH LACK, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual,<br><br>*Defendants*. | Case No. 2:18-cv-00617-RGK-GJS<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge:   Hon. R. Gary Klausner<br>Date:    April 15, 2019<br>Time:    9:00 a.m.<br>Place:   Courtroom 850 |

1
2

## TABLE OF CONTENTS

**ARGUMENT** ................................................................................................. **1**

I.      Lack is typical of absent class members ................................................ **2**

II.      The proposed class action is shot through with common questions .. **4**

III.      A class action is superior ...................................................................... **9**

**CONCLUSION** ............................................................................................. **10**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**United States Appellate Court Cases**

*Blackie v. Barrack*,
 524 F.2d 891 (9th Cir. 1975) ......................................................... 4

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ................................................. 2, 3

*In re First Alliance Mortg. Co.*,
 471 F.3d 977 (9th Cir. 2006) ................................................. 4, 6

*Just Film, Inc. v. Buono*,
 847 F.3d 1108 (9th Cir. 2017) ........................................................ 8

*Klay v. Humana, Inc.*,
 382 F.3d 1241 (11th Cir. 2004) .................................................. 10

*Zinser v. Accufix Research Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001) ....................................................... 9

**United States District Court Cases**

*Arthur v. United Industries Corp.*,
 No. 2:17-cv-06983-CAS, 2018 WL 2276636 (C.D. Cal. May 17, 2018) ...... 6

*Greene v. Mizuho Bank, Ltd.*,
 206 F. Supp. 3d 1362 (N.D. Ill. 2016)..................................... 7, 8

*Greene v. Mizuho Bank, Ltd.*,
 327 F.R.D. 190 (N.D. Ill. 2017) ............................................... 3, 9

*Jordan v. Paul Fin., LLC*,
 285 F.R.D. 435 (N.D. Cal. 2012) ............................................. 7, 8

*Mezzadri v. Medical Depot, Inc.*,
 No. 14-cv-2330-AJB-DHB, 2016 WL 5107163 (S.D. Cal. May 12, 2016)... 6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Plascencia v. Lending 1st Mortg.*,
      No. C 07-4485 CW, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011)...... 1, 6, 7

*Vaccarino v. Midland Nat'l Life Ins. Co.*,
      No. CV 11-5858 CAS, 2013 WL 3200500 (C.D. Cal. June 17, 2013) . *passim*

**State Cases**

*Engalla v. Permanente Med. Grp., Inc.*,
      938 P.2d 903 (Cal. 1997)........................................................................ 5, 6

*Massachusetts Mutual Life Ins. Co. v. Superior Court*,
      97 Cal. App. 4th 1282 (4th Dist. 2002) ...................................................... 4, 6

*Mirkin v. Wasserman*,
      858 P.2d 568 (Cal. 1993)....................................................................... 1, 4, 8

*Occidental Land, Inc. v. Superior Court*,
      556 P.2d 750 (Cal. 1976)........................................................................ 4, 6

*Vazquez v. Superior Court*,
      484 P.2d 964 (Cal. 1971)..................................................................... 4, 5, 6

**<u>Rules and Statutes</u>**

Fed. R. Civ. P. 23 ....................................................................................... 1

# ARGUMENT

Defendant Mizuho Bank, Ltd.'s opposition to certification relies principally on two things: (1) imputing dispositive significance to an unfinished foreign legal proceeding, and (2) ignoring unfavorable parts of Plaintiff Joseph Lack's testimony. As to the Japanese proceedings, Mizuho first says that the trustee's decision to deny Lack's claim renders him atypical of the class. But Mizuho cites nothing, and Plaintiff could find nothing, to support the implicit notion that a fraud claim's success turns on whether the claim could be pursued in a bankruptcy or civil rehabilitation proceeding, particularly a foreign one. What matters for Fed. R. Civ. P. 23 is that the merits of Lack's claim match with the merits of absent class members' claims. And until the Japanese proceedings actually begin compensating class members, it is no basis to deem class litigation here and now to be inferior.

As to Lack, Mizuho ignores that he testified that he would not have deposited money to Mt. Gox had he known about Mizuho's policy of not processing outbound wires. In other words, he testified to his actual reliance on Mizuho's fraudulent omission. That resolves two of the concerns raised by Mizuho. First, Lack is a suitable representative in large part because of his actual reliance. Second, Lack's testimony is key to raising a classwide inference of reliance under California law. As *Mirkin v. Wasserman*, 858 P.2d 568, 575 (Cal. 1993), holds, when material misrepresentations are made uniformly to a class of individuals, "an inference of reliance arises as to the entire class." That inference is particularly appropriate in a class action when, as here, the named plaintiff presents evidence of his own reliance. *See Vaccarino v. Midland Nat'l Life Ins. Co*., No. CV 11-5858 CAS, 2013 WL 3200500, at *14 (C.D. Cal. June 17, 2013); *Plascencia v. Lending 1st Mortg*., No. C 07-4485 CW, 2011 WL 5914278, at *3 (N.D. Cal. Nov. 28, 2011). Because Lack's testimony provides the basis for that inference, many of Mizuho's purported individual issues simply do not exist.

The remainder of Mizuho's arguments, as explained below, are either unsupported by the record or the law. The motion for class certification should be granted.

## I.   Lack is typical of absent class members.

Mizuho first attacks Lack's ability to represent the proposed class. A plaintiff is typical of a proposed class when "the plaintiffs' claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Vaccarino*, 2013 WL 3200500, at *7 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). Mizuho suggests that Lack's claim fails to clear this threshold because it will be "difficult, if not impossible" for Lack to demonstrate reliance.

Not so. In fact, Lack testified that "obviously, had I known that information [about Mizuho's policies towards Mt. Gox] it would also have changed my decision to deposit money into that account." (Excerpts from the Deposition of Joseph Lack, Dkt. 86-21, at 164:25-165:2.) The testimony highlighted by Mizuho (*see* Dkt. 90, at 10-11) doesn't conflict with that statement. Instead, it explains it. As Lack testified, his decision to invest on Mt. Gox was motivated in large part by what he perceived to be Mt. Gox's security and reliability. (Further Excerpts from the Deposition of Joseph Lack, Exh. 23 at 85:14-88:11.) He was unconcerned by the delays Mt. Gox had reported because the exchange had an obvious, benign explanation: Mt. Gox "had a lot of business coming in and a lot of people coming in with new accounts and – and it took time to process all the deposits and withdrawals." (Dkt. 86-21, at 163:22-25.) But, as we now know, that benign explanation was wrong. And, Lack averred, that would have mattered: He would not want to deal with it if the reason for the backlog was "that Mizuho … stopped doing business with Mt. Gox." (*Id.* at 163:2-11.) Mizuho's actions towards Mt. Gox, in other words, undermined the security and reliability depositors—like Lack—perceived Mt. Gox to have. This made the Mt. Gox exchange a poor place

1  to invest, regardless whether one's intentions were to actively trade bitcoin for

2  cash, withdraw bitcoin immediately, or hold on to bitcoin as an investment and

3  withdraw it (whether as bitcoin or by converting bitcoin to cash) as needed.

4      Mizuho's purported analogy to the *Greene* matter fails. (*See* Dkt. 90, at 11.)

5  The court there found that the putative named plaintiff, Motto, had given testimony

6  suggesting that Mizuho's actions "[were] not material to his investment decision"

7  because regardless of Mizuho's policies "he would have found a way to invest in

8  bitcoin on the Mt. Gox exchange." *Greene v. Mizuho Bank Ltd.*, 327 F.R.D. 190,

9  193, 195-96 (N.D. Ill. 2018). Lack, as explained, stands in the opposite position:

10 Unlike Motto, Lack testified that knowledge of Mizuho's conduct would have

11 affected his decision to invest in the first place. (Dkt. 86-21, at 163:2-11.) Indeed,

12 the *Greene* court's conclusion was premised on the finding that Motto was unique.

13 The court found that "while it is possible that some other Mt. Gox investors were

14 of similar mind [to Motto], it is highly likely … that most investors took a different

15 view." *Greene*, 327 F.R.D. at 196. Thus, Motto's situation applied "only to him, or

16 at most to him and a small subset of other subclass members." *Id*. Lack's situation,

17 as the *Greene* court's analysis implies, is the far more typical—and reasonable—

18 one.

19     Mizuho also briefly argues that the Japanese bankruptcy trustee's decision to

20 reject Lack's bankruptcy claim "underscores his dissimilarity" from the proposed

21 class. (Dkt. 90, at 12.) Mizuho cites no law to support this notion. The Japanese

22 bankruptcy trustee's decision has nothing to do with whether the merits of Lack's

23 claim in this litigation are "reasonably co-extensive," *Hanlon*, 150 F.3d at 1020,

24 with the claims of absent class members. Moreover, on this point, the opposition is

25 at war with itself (and the trustee): as Mizuho says, it credited the funds Lack

26 transferred to Mt. Gox's bank account, establishing that, contrary to the trustee's

27 decision, the amount *does* exist. (*See* Dkt. 90, at 7, 12.) For the purposes of this

28 litigation and motion, Mizuho's admission puts Lack on equal footing with the rest

1  of the class: He, like everyone else, deposited money onto the exchange and lost it.

2  (To these points, it bears mentioning that Lack's issues with the Japanese

3  proceedings incentivizes him to pursue this litigation with vigor, given that his

4  success in Japan turns on appealing the trustee's initial rejection of his claim—

5  making him an ideal advocate for the class he seeks to certify.)

6  **II.   The proposed class action is shot through with common questions.**

7        Mizuho next posits that class treatment is inappropriate because there exist

8  individual questions on nearly every question posed by the putative class's fraud

9  claim. (Dkt. 90, at 12-20.) Mizuho does make one implicit concession: that its

10 intent was common to class members. (See generally id. (not discussing scienter).)

11 Mizuho's attempts to conjure individual issues with respect to the rest of the claim,

12 however, fail.

13       The Ninth Circuit "favors class treatment of fraud claims stemming from a

14 'common course of conduct.'" *In re First Alliance Mortg. Co.*, 471 F.3d 977, 990

15 (9th Cir. 2006) (quoting *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975)). A

16 common course of conduct permits classwide resolution of several questions,

17 including not only intent, but also falsity and materiality. The case for certification

18 here is even stronger than in *First Alliance* because, under California law, when a

19 material fact is misrepresented to or withheld from a class of individuals, "an

20 inference of reliance arises as to the entire class." *Mirkin*, 858 P.2d at 575; *see*

21 *Occidental Land, Inc. v. Superior Court*, 556 P.2d 750, 754 (Cal. 1976); *Vazquez v.*

22 *Superior Court*, 484 P.2d 964, 973 n.9 (Cal. 1971); *Mass. Mut. Life Ins. Co. v.*

23 *Superior Court*, 97 Cal. App. 4th 1282, 1292-94 (4th Dist. 2002).

24       These cases dictate certification here. First, there is no evidence that any

25 class member was aware of Mizuho's conduct. Mizuho resists this conclusion by

26 citing to an exchange between a Mt. Gox help desk representative and a Mt. Gox

27 investor (Mr. Pearce), and then gesturing to other communications from the

28 exchange. (Dkt. 90, at 14-15.) Mr. Pearce's communications instead support

1   Lack's argument: At best, the emails show that some Mt. Gox investors might have

2   known that "international withdrawals are currently delayed." (Pearce001458.) The

3   exchange does not show, as Mizuho states, that class members might have known

4   that Mizuho was no longer processing outbound wire requests, or the effect of that

5   decision on the exchange's ability to stay afloat. Indeed, the email exchange is

6   consistent with the balance of the record: Class members, including Lack (Exh. 23

7   at 161:16-163:25) were aware of a bottleneck, but were never informed of its true

8   source or the reason for it. Thus, the issue of falsity (or whether material

9   information was indeed withheld from the class) is common to every class

10  member. Mizuho invokes the same evidence to argue that individual questions of

11  knowledge and the nature of the alleged "misstatement of omission" are pervasive,

12  (Dkt. 90, at 14-15, 15-16), but the arguments meet the same fate: none of the cited

13  evidence shows or even suggests knowledge of Mizuho's conduct (or its decision

14  to hide that conduct from depositors) in this particular instance—including any of

15  the communications between Mt. Gox and individual exchange members—much

16  less provide the basis for any inference that other class members knew of Mizuho's

17  duplicity, so the argument must be rejected.

18          Materiality, too, is common. As the California Supreme Court has held, a

19  fact is material "if a reasonable man would attach importance to its existence or

20  nonexistence." *Engalla v. Permanente Med. Grp., Inc*., 938 P.2d 903, 919 (Cal.

21  1997). This "reasonable man" standard is amenable to class treatment because the

22  individual circumstances of class members need not be individually examined. *See,*

23  *e.g.*, *Vaccarino*, 2013 WL 3200500, at *12; *Vazquez*, 484 P.2d at 973 n.9.

24  Addressing materiality as though it were a subjective question, Mizuho contends

25  that the materiality of the withheld information will vary from individual to

26  individual. (Dkt. 90, at 13-14.) Because Mizuho implicitly misstates California

27  law, its argument must be rejected.

28

Unsurprisingly, Mizuho's cases are off-point. In *Arthur v. United Industries Corp.*, No. 2:17-cv-06983-CAS, 2018 WL 2276636, at *12 (C.D. Cal. May 17, 2018), the challenged statement on product packaging was true with respect to some product uses but untrue with respect to others. The court denied certification in part because the plaintiff did not attempt to limit his class to purchases relating to the instances in which the representation was untrue and so a classwide assessment of that information was impossible. *Id*. Here, by contrast, each class member stands in the same relationship to Mizuho: no one was aware that Mizuho was no longer processing withdrawals from the Mt. Gox account. In Mizuho's other case, *Mezzadri v. Medical Depot, Inc.*, No. 14-cv-2330-AJB-DHB, 2016 WL 5107163, at *6 (S.D. Cal. May 12, 2016), the court acknowledged that "the objective nature of [the materiality test] renders materiality particularly susceptible to common proof," but concluded that case was different because "the evidence show[s] that a sizeable percentage of the putative class did not consider the representations at issue." As such, much (nearly 99%) of the class couldn't have been misled. *See id*. But that is no issue here, because the problem in this case is that no class member even had the opportunity to consider the information at issue. Unlike *Mezzadri*, the class proposed here remains similarly situated with respect to the underlying scheme. *See First Alliance*, 471 F.3d at 990-91.

Reliance, too, is assessable classwide. First, a showing of materiality by itself gives rise to an inference of reliance. *See Engalla*, 938 P.2d at 919. And California courts have long held that when a piece of information is uniformly misrepresented or omitted from a class of people, that class may be able to rely on an inference of reliance in certain circumstances, rendering the question common. *See Occidental Land*, 556 P.2d at 754; *Vazquez*, 484 P.2d at 973 n.9; *see also Mass. Mutual*, 97 Cal. App. 4th at 1292-94 (holding that the same principles apply in omission cases); *Plascencia*, 2011 WL 5914278, at *3 (finding that reliance was a common issue in an omission case). Federal courts implementing these holdings

have concluded that a putative class representative has met their burden to show that reliance is a common question when (1) there is some evidence that the misrepresented or omitted information is material, (2) every class member was exposed to the challenged misrepresentation or omission, and (3) the named plaintiff establishes their actual reliance. *Vaccarino*, 2013 WL 3200500, at *12-14; *Jordan v. Paul Fin., LLC*, 285 F.R.D. 435, 465-66 (N.D. Cal. 2012); *Plascencia*, 2011 WL 5914278, at *1-3. These criteria are met here.

First, although Mizuho briefly contends that the omitted information about its practices wasn't material (Dkt. 90, at 13-14), it does not contend that there is no evidence of materiality. As Lack explained in his opening memorandum, Mt. Gox's Japan Post account, the existence of which underlies Mizuho's argument about non-materiality, in fact did not serve as a full substitute (or as a fungible replacement) for Mizuho, but instead predominantly served only a small handful of high-value accounts. (Dkt. 86, at 3-4, 6-7.) And Mizuho, of course, was the only bank any depositor dealt with. (Dkt. 86-21, at 20:6-8; 55:14-15.) This provides a basis for a jury to conclude that information about Mizuho's new practices were material. *See also Greene v. Mizuho Bank, Ltd*., 206 F. Supp. 3d 1362, 1375 (N.D. Ill. 2016).

Second, as mentioned earlier, there is no evidence that any class member was exposed to the truth about Mizuho's policies. Mizuho's purported evidence of "knowledge" demonstrates anything but.

Finally, and also as explained above, Lack testified that he would not have deposited had he known the truth, thus establishing his actual reliance. Thus, under *Vaccarino*, *Jordan*, and *Plascencia*, reliance is a common question here. Mizuho's principal response is that the situation at Mt. Gox was too fluid during the class period to make any consistent determination regarding reliance (and, to some extent, materiality). (Dkt. 90, at 16-17.) But the circumstances remained constant in the way that matters here: Mizuho never processed any withdrawals, and no

1   class member ever discovered that fact. The court in *Jordan* confronted a similar

2   argument. *See* 285 F.R.D. at 464. The defendant there argued that class members'

3   individual knowledge and motivations rendered reliance an individualized

4   question. *Id*. Looking to the factors just described, however, the court rejected that

5   argument, concluding that the class was owed a presumption of reliance despite

6   minor, individualized variability among the class. *Id*. at 466-67. The court in

7   *Vaccarino* also concluded that the presumption of reliance was not rebutted by

8   evidence about class members' varying understanding of allegedly misleading

9   terms in loan documents, finding that no class member was aware of the "precise

10  mechanics" of the scheme obscured by those documents. *See* 2013 WL 3200500,

11  at *13. For similar reasons, Mizuho has not rebutted the presumption of reliance

12  here. Last, Mizuho's citation to *Mirkin* is unhelpful to its cause because *Mirkin*

13  expressly acknowledges that an inference of reliance is appropriate in cases like

14  this. *See* 858 P.2d at 575.

15      Beyond reliance, Mizuho also argues that causation is individualized

16  because class members may ultimately have lost their deposits because of actions

17  taken by Mt. Gox. (Dkt. 90, at 17-18.) But this attack again ignores Lack's theory

18  of liability: but for the omissions at issue, neither he nor any other investor would

19  have deposited in the first place. Both this Court and the court in *Greene* already

20  rejected Mizuho's attempt to pass the effects of its conduct onto other actors. (*See*

21  Dkt. 51 at 7; *Greene*, 206 F. Supp. 3d at 1377 (rejecting argument as

22  "unpersuasive, because Lack . . . allege[s] that [he] would have not wired funds to

23  Mizuho had [he known the truth].").)

24      Mizuho last says that individualized damages questions will predominate.

25  (Dkt. 90, at 18-19.) But the Ninth Circuit has been unequivocal that individualized

26  damages questions cannot defeat class certification. *See Just Film, Inc. v. Buono*,

27  847 F.3d 1108, 1120 (9th Cir. 2017). Mizuho says that this case is different

28  because Lack has not "offered any … method" to calculate damages. (Dkt. 90, at

18.) Not so. Lack presses "a straightforward theory of damages or detriment …: If Mt. Gox's customers would not have invested on the exchange had they been aware of Mizuho's cessation of outbound fiat currency wire transfers, then Mizuho is arguably responsible for the customers' decision to invest and accordingly liable for their lost investment[.]" *Greene*, 327 F.R.D. at 196 (rejecting a nearly identical argument in the Motto matter). Moreover, individual damages calculations here will not be overly burdensome, because the class is not more than a few hundred individuals, and any claims can be audited by bank records.

Thus, common issues predominate.

## III.   A class action is superior.

Mizuho last contends that a class action is not superior for two reasons. First, Mizuho cites the Japanese rehabilitation proceeding. (Dkt. 90, at 19-20.) Mizuho asserts with unwarranted confidence that the Japanese bankruptcy will make many members of the class whole, rendering this litigation inferior. The bankruptcy is now into its fifth year and has provided class members with no relief. There is not yet reason to believe that it is the silver bullet Mizuho describes. Indeed, there exist several hurdles to relief in the bankruptcy. The proposed rehabilitation plan, for instance, still must be approved by creditors. And the most recent statements of the estate's assets and liabilities produced by the trustee raises serious questions as to whether the Mt. Gox estate has enough cash and bitcoin to cover all approved claimants. (Lawson Decl. ¶¶ 3-4, Exh. 24.) Mizuho's rank speculation about the success of the bankruptcy proceeding does not demonstrate that class litigation here and now is inferior to other means of resolving the instant controversy. (It also goes without saying that any recoveries potentially made by creditors through the Japanese proceedings—concerning the bankrupt estate of Mt. Gox—cannot possibly result in "inconsistent adjudications" with this litigation, which was the concern addressed in *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001), Mizuho's principal authority on this point.)

Mizuho also cites the potential recovery here, pretending that Lack's $40,000 loss is indicative of the losses of the class. (Dkt. 90, at 20.) But as Lack explained in his opening memorandum, the average class member's losses are around $12,000. (Dkt. 86, at 19.) While this amount is larger than many small-claims class actions, it is not enough to incentivize individual cases against a well-heeled and aggressive defendant like Mizuho, particularly on a contingency basis. As the Eleventh Circuit has held, class litigation is generally superior when "the amounts in controversy would make it unlikely that most of the plaintiffs, or attorneys working on a contingency fee basis, would be willing to pursue the claims individually. This is especially true when the defendants are corporate behemoths with a demonstrated willingness and proclivity for drawing out legal proceedings for as long as humanly possible and burying their opponents in paperwork and filings." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1271 (11th Cir. 2004).

Finally, Mizuho raises non-specific concerns about case management. (Dkt. 90, at 20.) Most of these repeat Mizuho's attempt to turn away from Lack's theory of liability and towards the purported "individualized" issues discussed throughout its brief. But as discussed herein, these issues are no barrier to certification because every class member's fraud claim turns on the same evidence regarding Mizuho's uniform omissions. Mizuho also suggests that there may be difficulty in "identifying" class members, but in reality this "concern" is just Mizuho's individualized-damages argument reprised as a manageability concern. But, as discussed, individualized damages questions (whether confronted as a matter of predominance or manageability) cannot defeat class certification, and any concerns about manageability are slight, given the small class size.

## CONCLUSION

The Court should grant the motion for class certification.

Respectfully submitted,
**JOSEPH LACK**, individually and on
behalf of all others similarly situated,

Dated: April 1, 2019

By: /s/J. Aaron Lawson
One of Plaintiff's Attorneys

RAFEY S. BALABANIAN (SBN 315962)
rbalabanian@edelson.com
J. AARON LAWSON (SBN 319306)
alawson@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: (415) 212-9300
Fax: (415) 373-9435

*Counsel for Plaintiff and the Putative
Classes*